CHARLES W. HOTZE, Plaintiff-Appellant, v. NORBERT A. DALEIDEN *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—89—3221

Opinion filed February 10, 1992.—Modified on denial of rehearing June 1, 1992.

Robert W. Karr & Associates, Ltd., and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky, of counsel), for appellant.

Arnstein & Lehr, of Chicago (Arthur L. Klein and Richard K. Hellerman, of counsel), for appellee Norbert A. Daleiden.

Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan, William V. Johnson, Robert L. Nora, and Charles P. Rantis, of counsel), for other appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Charles W. Hotze, appeals from an order granting summary judgment in favor of defendants Norbert A. Daleiden and the law firms of Hosier, Niro & Daleiden, Ltd., and Niro, Daleiden & Jager, Ltd. (Daleiden or defendants), as to count VI of plaintiff's seventh amended complaint.[1] On appeal, plaintiff contends that the trial

---

[1]On January 31, 1989, defendants filed a motion for summary judgment in response to count IV of plaintiff's sixth amended complaint. On February 14, 1989, plaintiff filed his seventh amended complaint, wherein count IV of the sixth amended complaint reappeared renumbered as count VI. Defendants' summary judgment motion was granted as to count VI of the seventh amended complaint and is the subject of this appeal.

court erred in granting defendant Daleiden's motion for summary judgment. For the following reasons, the judgment of the trial court is reversed and remanded for further proceedings.

The record sets forth the following facts relevant to this appeal. In 1984, plaintiff filed a lawsuit against defendants alleging, *inter alia*, that the legal fees charged by defendants were excessive and unreasonable. From 1978 through May 1984, plaintiff engaged attorney Daleiden for professional legal services on his behalf and for certain corporations in which plaintiff was a principal shareholder. In his seventh amended complaint, plaintiff alleged that from approximately April 1972 through January 1981 he suffered from pheochromocytoma, a tumor of the adrenal gland, which impaired his physical and mental condition and affected his business judgment and general comprehension. As a result of his diminished mental capacity, plaintiff entered into various business transactions to his detriment. Daleiden instituted several lawsuits on plaintiff's behalf to recover plaintiff's losses incurred in these business transactions.

In counts I through V, plaintiff alleged that defendants breached the fiduciary duties owed to him. Plaintiff alleged that due to his diminished mental capacity, he was unable to fully understand what legal services were necessary and actually performed by defendants, and that he was prevented from understanding the nature and extent of defendants' charges and fees for legal services allegedly rendered.

In count VI, plaintiff alleged that from April 5, 1973, through May 27, 1983, he engaged the medical services of Dr. Dongsuk Kim for various medical complaints. According to count VI, the tumor on plaintiff's adrenal gland was not diagnosed until December 25, 1980, and was not removed until January 5, 1981.

Plaintiff alleged that Dr. Kim had mishandled his medical condition and plaintiff wanted a medical malpractice suit filed on his behalf against Dr. Kim. Plaintiff alleged that in November 1982 he met with Daleiden in his office and at that time directed Daleiden to file a lawsuit against Dr. Kim. Daleiden responded that he did not handle medical malpractice lawsuits. Plaintiff alleged that he then specifically directed Daleiden to retain the services of a malpractice attorney and to consult with him on the matter. Plaintiff alleged that he wanted Daleiden to participate in the medical malpractice case against Dr. Kim since plaintiff had paid Daleiden and his firm considerable money and since Daleiden knew the facts of plaintiff's medical condition.

Plaintiff alleged that he continued to meet with Daleiden to discuss other legal matters and continued to ask Daleiden if he had found a lawyer to handle the action against Dr. Kim. Plaintiff alleged

that Daleiden responded each time that he had not yet found suitable counsel but that he would do so.

Plaintiff alleged that in September 1983 he again asked Daleiden if counsel had been retained for the malpractice case. Daleiden responded that plaintiff probably did not have grounds for a suit against Dr. Kim and that the statute of limitations had probably expired.

In count VI, plaintiff alleged that defendants committed "legal malpractice" by (a) negligently allowing the statute of limitations to run by not obtaining an attorney; (b) failing to refer plaintiff to a medical malpractice attorney when Daleiden knew he did not have the experience to handle medical malpractice cases; and (c) failing to advise plaintiff of the status of his claim.

Defendants moved for summary judgment on the ground that there is no evidence of an agreement between the plaintiff and Daleiden that Daleiden was to find another attorney to file a lawsuit against Dr. Kim. Defendants contended that without evidence of such an agreement, count VI fails as a cause of action. Defendants argued that both plaintiff's and Daleiden's deposition testimony support the conclusion that no agreement existed.

Following a hearing, the trial court entered summary judgment in favor of defendants, concluding that there was no attorney-client relationship between plaintiff and Daleiden as to the medical malpractice suit. In reaching its decision, the trial court noted that according to statements purportedly made by plaintiff in his deposition, plaintiff wanted Daleiden to handle the case. These statements will be discussed below as necessary. Plaintiff appeals from the order granting summary judgment.

Plaintiff argues that the trial court erred in its application of the law to the facts of the case. Plaintiff contends that the proper focus of the motion was whether or not a disputed issue of material fact exists as to whether an attorney-client relationship existed, not whether an attorney-client relationship existed. Section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c)), which sets forth the requirements for a grant of summary judgment, provides, in relevant part:

> "The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Defendants argue that the trial court properly found on summary judgment that no attorney-client relationship existed.

In order to survive a motion for summary judgment, the non-moving party must come forward with evidentiary material that establishes a genuine issue of fact. (*Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 545 N.E.2d 184.) Nevertheless, because summary judgment is a drastic method of terminating litigation, the movant's entitlement must be free from doubt. (*Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233, 564 N.E.2d 778, 780.) Accordingly, the court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Logan,* 139 Ill. 2d at 234, 564 N.E.2d at 780.

Plaintiff argues that the pleadings, his own deposition testimony and the deposition testimony of Daleiden show disputed issues as to material facts. In support thereof, plaintiff submits quotations from his deposition testimony and the deposition testimony of Daleiden as the testimony appeared summarized in defendants' motion and plaintiff's response. Plaintiff failed, however, to include in the record on appeal either complete transcripts of the depositions referenced or any actual deposition excerpts. The record also indicates that the parties failed to provide the trial court with the complete deposition transcripts for consideration on the motion for summary judgment.

■ It is the duty of the appellant to present a complete record on appeal so the reviewing court will be fully informed regarding the issues in the case. (*International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* (1988), 177 Ill. App. 3d 555, 532 N.E.2d 493.) A reviewing court will not consider matters which are not contained in the record. (*Vanguard,* 177 Ill. App. 3d at 564.) While it is required that this court take the deposition testimony in its entirety (*Riley v. Physicians Weight Loss Centers, Inc.* (1989), 192 Ill. App. 3d 23, 548 N.E.2d 811), as the record does not show that the parties objected to the procedure of submitting merely quoted portions of testimony, and as the testimony summaries presented in plaintiff's response are not inconsistent with the testimony summaries presented in defendants' motion, this court may accept and consider for purposes of review the facts set forth therein. See *Murphy v. Chestnut Mountain Lodge, Inc.* (1984), 124 Ill. App. 3d 508, 464 N.E.2d 818.

Plaintiff argues that the facts, as shown through the following deposition excerpts, reveal he met with Daleiden and asked him to handle the medical malpractice case:

"Q. Do you recall—I am now asking about 1982. Do you recall the dates or times of any meetings with Mr. Daleiden in 1982 where the subject of Dr. Kim was discussed?

A. Yes.

Q. Please relate for me.

A. In November, either before or after Thanksgiving, I asked Norb to file a suit against Dr. Kim and I believe at that time he told me that he didn't handle that type of litigation. And I believe my answer to that was he is handling these cases and that if he did not handle it, get somebody who would and he said he would.

* * *

Q. Can you tell us where this conversation took place?

A. In his office.

Q. Was anyone else present?

A. No."

Defendants respond that the dates upon which the parties discussed the possible filing of a lawsuit against Dr. Kim are irrelevant to the determination as to whether an attorney-client relationship had been created.

The situation in the present case is distinguishable from *Mid States Vending Service, Inc. v. C.A.P., Inc.* (1977), 45 Ill. App. 3d 947, 360 N.E.2d 448, relied on by defendants. In *Mid States Vending*, defendant failed to pay on a promissory note. Plaintiff filed a complaint and received a judgment in his favor. Defendant's pleaded defense to the confirmation of judgment was that the loan arose out of an illegal contract between the parties, and he was therefore not obligated to pay. Subsequently, summary judgment was granted in plaintiff's favor and defendant appealed on the same grounds.

On appeal, the reviewing court found there was no material factual issue as to the debt due, which was the subject matter of plaintiff's cause of action, because on its face, the promissory note was silent as to any contract between the parties. The court held that "[f]acts unrelated to the essential elements of the plaintiff's cause of action are immaterial and regardless of how sharply controverted, their presence in the record will not warrant denial of a motion for summary judgment." (45 Ill. App. 3d at 949.) By contrast, in the present case, at issue is whether a material question of fact exists as to whether an attorney-client relationship was created between the parties. The meetings between the parties, the dates of these meetings, and the subject matter discussed during these meetings are facts directly relating to the essential element of defendants' motion: whether an attorney-client relationship was created between the plaintiff and Daleiden.

Plaintiff argues that an attorney-client relationship is further evidenced by the following deposition excerpts:

"Q. Mr. Hotze, did you ask Mr. Daleiden to sue Dr. Kim or did you ask Mr. Daleiden to refer you to somebody to sue Dr. Kim?

A. I asked him to handle it because he was handling everything else and he knew the whole picture.

\* \* \*

A. I expected him to handle it. I didn't want to deal with another attorney. He knew from our numerous conversations what the problem was. I couldn't see the amount of money I was paying that I should have to go to another attorney to initiate another lawsuit all by myself. It tied in with what we were trying to prove in my mind. I'm not a lawyer.

\* \* \*

Q. Did you tell Norb that you did not want your contemplated malpractice claim given to another attorney because he was handling everything else for you?

A. No.

Q. You never told him that?

A. I wanted—if he had to get another attorney, I wanted him to handle the whole thing through the attorney because their firm did not handle medical malpractice suits.

Q. You wanted him to handle the whole thing through what attorney?

A. Through Mr. Daleiden. In other words—

Q. Go ahead.

A. I wanted Mr. Daleiden to handle it; get the attorney upon [sic] whom we had spoken of before, that he would have to get an outside consultant, whatever you call it.

\* \* \*

Q. So in other words, you asked Norb to handle your malpractice claim against Dr. Kim?

A. With the understanding that he would have a consultant because they didn't handle those cases. In other words, I wanted Norb to handle the whole thing because he was handling anything I had anyway with the exception of a few minor things.

Q. You made that request of Norb, is that correct?

A. That's right.

Q. Then what did Norb say to you?

A. He said he would do it.

Q. He said he would accept your request?

A. It's a question of interpretation. He said he would do it.

Q. Do you recall what he specifically said to you?

A. Just that. That, okay, he would do it.

Q. Do what though?

A. My interpretation, go outside, get an expert on this thing, direct him, the expert, what to do and just do it.

Q. You wanted Norb to direct the expert what to do?

A. Well, yes, give him the assignment.

Q. So then did you want Norb to make a telephone call to another attorney who specialized in medical malpractice to handle your possible claim against Dr. Kim?

A. I do not know what Norb would have done. I wanted him to handle the case and he said he would get somebody. He would have to get an outside consultant."

In addition, an affidavit attached to plaintiff's response states that he asked Daleiden to "obtain the services of a lawyer" who handled medical malpractice litigation, and that Daleiden "said he would obtain the medical malpractice lawyer." Plaintiff contends that his testimony above, and his affidavit, combined with the following excerpts of Daleiden's deposition testimony, show that an attorney-client relationship existed, and therefore, a genuine issue of fact remains:

"Q. Did you discourage [Hotze] with respect to a potential lawsuit against Dr. Kim based solely upon your seeing Dr. Kim as a potential favorable witness on the issue of diminished capacity, mentally and physically?

A. Not solely.

Q. For what other reasons did you dissuade or discourage Mr. Hotze from pursuing the malpractice case?

A. I am not certain that I persuaded him or dissuaded him not to file against Dr. Kim. My whole feeling about it was I didn't know anything about the medical malpractice area. If he wanted to talk to somebody in that area, I would refer them to him. If he wanted to talk to a medical malpractice specialist, perhaps other things would have come out from those discussions, but he didn't want to.

Q. Did he say he did not want to pursue or investigate a claim against Dr. Kim?

A. Well, he talked about it, but never wanted to know who to go to. Starting, as I said in the summer of '83 and then maybe a couple follow-ups [sic] during '83, he wasn't ready. He didn't want to go to a medical malpractice specialist."

Defendants argue that Daleiden submitted an affidavit which stated that "At no time *** did Hotze tell me that he wanted to talk

to an attorney specializing in medical malpractice." Defendants contend that Daleiden's affidavit and all of the above deposition testimony clearly support the conclusion that there was no attorney-client relationship between Daleiden and the plaintiff.

The trial court examined the above deposition excerpts and affidavits in considering defendant's summary judgment motion. The trial court then addressed whether Daleiden agreed to "get or secure the services of another lawyer for Mr. Hotze."

The trial court concluded that no attorney-client relationship was created between the parties as to the medical malpractice suit, stating:

> "THE COURT: Well, there seems to be no clear evidence that he [Hotze] said: 'Will you get a lawyer for me to handle this matter?' and he [Daleiden] said: 'Yes, I will.' That is what is lacking here.
>
> * * *
>
> There was the: 'I would like for you to handle it.' 'But my firm doesn't handle this kind of case.' Apparently, and now we are speculating, that he wanted him to get someone whom he would supervise."

■ Our review of the record indicates that plaintiff presented evidence which creates an issue as to whether Daleiden agreed to obtain an attorney for plaintiff's proposed medical malpractice claim against Dr. Kim. In light of the contradictory evidence presented in deposition testimony and affidavits, the trial court erred in granting summary judgment in favor of defendants as to count VI. The trial court stated that there was "no clear evidence" that Daleiden agreed to obtain an attorney for plaintiff. Summary judgment should be granted cautiously so that the opponent's right to trial is not usurped in the presence of conflicting facts and inferences. (*Diamond Headache Clinic, Ltd. v. Loeber Motors, Inc.* (1988), 172 Ill. App. 3d 364, 526 N.E.2d 599.) Whether Daleiden agreed to obtain an attorney for plaintiff is a question of fact, not properly decided on a summary judgment motion.

■ Defendants further urge that an exhibit to the summary judgment motion contains a judicial admission by plaintiff that he did not intend to sue Dr. Kim. Defendants attach Daleiden's letter to plaintiff of May 8, 1984, in which Daleiden advised plaintiff that he was not aware until May 7, 1984, that plaintiff was determined to sue Dr. Kim. Defendants contend that the words, "Who said I had?" written by plaintiff on the face of the letter constitute a judicial admission.

Plaintiff counters that he was distressed when he wrote the comment on the letter and intended to write "Who said I hadn't[?]"

Defendants admit that the trial court did not expressly hold that the exhibit was a judicial admission. Where the record fails to show that a matter urged on appeal was decided by the trial court, the issue is not properly preserved for review. (*Morris v. Illinois State Board of Education* (1990), 198 Ill. App. 3d 51, 555 N.E.2d 725.)

For the aforementioned reasons, the judgment is reversed and remanded for further proceedings.

Reversed and remanded, as modified.

O'CONNOR and MANNING, JJ., concur.