THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD LEEPER, Defendant-Appellant.

Fifth District   No. 5—99—0260

Opinion filed November 17, 2000.

Daniel M. Kirwan and Edwin J. Anderson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Darrell Williamson, State's Attorney, of Chester (Norbert J. Goetten, Stephen E. Norris, and Kendra S. Peterson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

Three questions are presented in this appeal: two constitutional issues and one statutory. The constitutional issues involve (1) a request for self-representation and (2) a claim of the ineffective assistance of counsel. The statutory issue involves both section 5—8—7(b) of the Unified Code of Corrections (730 ILCS 5/5—8—7(b) (West 1992)) (the credit-against-sentence provision) and section 5—8—4(e)(4) of the Unified Code of Corrections (730 ILCS 5/5—8—4(e)(4) (West 1992)) (the consecutive-sentence provision). For the reasons that follow, we affirm the denial of the self-representation request, we conclude that the ineffective-assistance-of-counsel claim fails, and we affirm the lower court's decision declining to award the defendant sentencing credit for the time spent in the custody of the Department of Corrections for his parole violation.

## FACTS

On September 16, 1998, the State of Illinois charged the defendant, Donald Leeper, with the offense of driving while license revoked. The charge alleged that on August 8, 1998, Leeper operated a motor vehicle in Percy, Illinois, while his driver's license was revoked due to a prior conviction for driving under the influence of alcohol and after having previously been convicted of driving while license revoked. The court appointed the Randolph County public defender, Mr. Rayburn Fricke, to represent Leeper.

The cause was called for a jury trial on November 16, 1998. In addition to the driving-while-revoked charge, Leeper was also tried for two traffic violations. Prior to the jury selection, Leeper stated that he had a conflict of interest with Fricke. He stated that Fricke was not assisting him in preparing for the trial. Leeper then requested a continuance and different counsel. The court refused and stated that the jury was ready to be selected. Leeper then stated that he refused to have counsel represent him. Leeper stated that he had only limited communication with Fricke. Fricke indicated that he believed that he had covered everything with Leeper that needed to be covered.

The court prepared to conduct the *voir dire*. Fricke waived the transcription of the *voir dire*. Leeper again stated that he refused to cooperate with Fricke and did not want Fricke to represent him. Although the *voir dire* was not transcribed, the strikes for cause and the peremptory challenges were noted on the record. Following this, Leeper stated that he wanted to represent himself. The court refused and stated that the jury trial had begun. The court then took a lunch recess.

Upon return, the court noted that, during the recess, a juror had

contacted a bailiff and asked to speak with the judge. The judge then spoke with the juror. Neither the attorneys nor the court reporter was available at that time. The juror indicated to the judge that, due to her religious beliefs, she could not sit in judgment of another person and, therefore, could not serve on the jury. According to the judge, through his questioning, the juror indicated that she would be unable to deliberate and to reach a verdict. Because of this, the judge excused her. Fricke stated that the juror could have been highly favorable to Leeper, but he offered no objection to the court's actions.

In its opening statement, the State indicated that it would present evidence that a Percy police officer had seen a vehicle, driven by Leeper, fail to stop at a stop sign. The officer, in a marked squad car, then signaled for the vehicle to stop. The vehicle then accelerated away and went through an intersection before stopping in a parking lot. The driver tried to run from the officer. Additionally, the State stated that it would show that Leeper's driver's license had been suspended on the date of the offense.

Fricke then presented his opening statement and stated that Leeper pled not guilty to the offense. Fricke explained to the jury that the burden of proof in the case lay with the State to show that Leeper was guilty beyond a reasonable doubt. He also stated that he anticipated that Leeper would testify, and he asked the jury to listen carefully to both Leeper's and the police officer's versions of the events.

Washington County Deputy Sheriff Ralph Jones testified that on August 8, 1998, he was a police officer in Percy, Illinois. At 10:45 p.m., he had been patrolling in his marked squad car and observed a vehicle drive through a stop sign at Second and Almond Streets. Jones saw a driver and no passengers in the vehicle. Jones then turned on his lights in order to make a traffic stop. He then heard the vehicle accelerate. According to Jones, the vehicle then proceeded up Fourth Street, disregarded another stop sign, and eventually drove onto a parking lot. Jones testified that as he was standing next to the squad car with his weapon drawn, Leeper ran from the vehicle. Jones tackled Leeper, handcuffed him, and placed him in the squad car. During his testimony, Jones identified Leeper as the driver of the vehicle. Fricke did not cross-examine Jones. Leeper asked to cross-examine Jones, but the court did not allow him to do so.

Next, the State introduced into evidence a certified copy of Leeper's driver's license abstract, which indicated that Leeper's license had been revoked on August 8, 1998. The State then rested, and the court took a recess.

During the recess, Leeper told Fricke that he would not testify. After the recess, Leeper asked the court if he could show letters he had

written to Fricke about the case, which, according to Leeper, indicated that he had not received satisfactory responses from Fricke. Leeper stated that he believed he had evidence and witnesses with which to attack Jones's credibility but that a defense had not been prepared. Leeper again stated that he wanted to represent himself and that he did not think Fricke was competent. The court asked Leeper if he would testify, and he did not respond. The court then stated that it would proceed with the trial, and Fricke indicated that the defense would rest.

Next, the jury-instruction conference was held. After the conference, the court allowed the State to reopen its case to add to the record, for the court's use only, a certified copy of Leeper's driver's license abstract. The abstract showed Leeper's prior convictions for driving under the influence of alcohol and driving while license revoked. The defense made no objection.

Following another recess, Leeper stated that he no longer wanted to be present in the courtroom. The court informed the jury that Leeper had voluntarily elected not to stay in the courtroom. The defense then rested.

Brief closing arguments were given. The judge read the jury instructions to the jury, and the jury retired at 2:40 p.m. The jury then returned with guilty verdicts at 2:55 p.m.

On November 25, 1998, Leeper filed a *pro se* motion to remove the public defender as counsel, in which he alleged that he had been denied the effective assistance of counsel. On December 8, 1998, Leeper filed a *pro se* motion for a new trial, in which he also alleged that he had been denied the effective assistance of counsel and that the court had violated his constitutional rights in failing to remove Fricke.

On December 21, 1998, a hearing was held on the motion, and the judge decided that separate counsel should be appointed to represent Leeper. On January 8, 1999, the court appointed Mr. Randall Rodewald to represent Leeper.

On March 18, 1999, a hearing was held on the motion to remove the public defender as counsel. Fricke was called as a witness. He testified that between August and November 1998 he had three or four short meetings with Leeper regarding the case. Fricke acknowledged that he had used all of his peremptory challenges prior to the impaneling of a correctional officer and the wife of a deputy sheriff as jurors. He also acknowledged that he had not asked to question the juror that the judge had excused during the recess. Lastly, he acknowledged that he did not cross-examine the State's witness and did not object when the State reopened its case to submit the driver's abstract exhibit.

The court found that Fricke had done "the job he could based on the level of cooperation that he was receiving from his client." The court, however, granted the motion removing Fricke and appointed Rodewald to represent Leeper at the sentencing hearing.

On April 12, 1999, the sentencing hearing was held. Rodewald argued Leeper's posttrial motion, contending that Fricke had been ineffective. The court denied the motion for a new trial. A presentence investigation report had been filed December 18, 1998. The court noted Leeper's numerous prior felony convictions and found that he was eligible for an extended-term sentence. The court then imposed an extended-term sentence of six years' imprisonment for the driving-while-license-revoked conviction.

## STANDARD OF REVIEW

■ The determination of whether a defendant's constitutional rights have been violated is subject to *de novo* review. *Quantum Pipeline Co. v. Illinois Commerce Comm'n*, 304 Ill. App. 3d 310, 314, 709 N.E.2d 950, 953 (1999). The standard of review is also *de novo* for the appeal of the statutory claim. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237, 664 N.E.2d 61, 65 (1996).

## ANALYSIS

### I. Self-Representation

■ In *Faretta v. California,* the Supreme Court held that the sixth amendment right to counsel (U.S. Const., amend. VI) implicitly provides for the right of self-representation in criminal proceedings. *Faretta v. California*, 422 U.S. 806, 821, 45 L. Ed. 2d 562, 574, 95 S. Ct. 2525, 2534 (1975). The Illinois Constitution also has a similar provision that guarantees an accused this right. Ill. Const. 1970, art. I, § 8.

Before being permitted to represent themselves, defendants must knowingly and intelligently relinquish their right to counsel. *Faretta*, 422 U.S. at 835, 45 L. Ed. 2d at 581, 95 S. Ct. at 2541. Determining whether a defendant has made a knowing waiver is a factual determination based on the circumstances of each case. *People v. Simpson*, 172 Ill. 2d 117, 134, 665 N.E.2d 1228, 1237 (1996). This determination includes looking at the background, experience, and conduct of the accused. *Simpson*, 172 Ill. 2d at 133, 665 N.E.2d at 1237.

■ The waiver of counsel must be a clear and unequivocal expression to the judge that he or she wants to represent himself or herself. *People v. Burton*, 184 Ill. 2d 1, 21, 703 N.E.2d 49, 59 (1998). To determine if the waiver is clear and unequivocal, a court looks at the overall context of the proceedings to see if the accused truly desires to

represent himself or herself and if he or she has unequivocally invoked the right of self-representation. *Burton*, 184 Ill. 2d at 22, 703 N.E.2d at 59.

■ The timing of a request to proceed *pro se* has great significance. *Burton*, 184 Ill. 2d at 24, 703 N.E.2d at 60. Courts have held that such a "request is untimely where it is first made just before the commencement of trial, after trial begins, or after *meaningful proceedings have begun.*" (Emphasis added.) *Burton*, 184 Ill. 2d at 24, 703 N.E.2d at 60. After that time, a court has the discretion to deny a defendant's request to proceed *pro se*. *Burton*, 184 Ill. 2d at 25, 703 N.E.2d at 60. Such discretion is necessary so that a defendant cannot use this right to frustrate the effective prosecution of his case. *People v. Hanson*, 120 Ill. App. 3d 84, 88, 457 N.E.2d 1048, 1051 (1983).

■ The facts of this case fail to show that Leeper made an unequivocal request to represent himself prior to the commencement of *meaningful proceedings*. Just prior to the trial, Leeper asked both for a continuance and for the appointment of a different attorney. The court denied these requests, and Leeper stated that he refused his appointed counsel. Later, after the jury had been chosen and the trial was about to begin, Leeper mentioned representing himself. The court cannot, and will not, infer from Leeper's earlier conduct and statements that he wanted to proceed *pro se*. Leeper did not make a clear and unequivocal request to represent himself, as the law requires, until after meaningful proceedings had begun; thus, the trial court properly exercised its discretion in denying Leeper's request.

## II. Ineffective Assistance of Counsel

Under both the United States Constitution (U.S. Const., amend. VI) and the Illinois Constitution (Ill. Const. 1970, art. I, § 8), an accused has a due process right to the *effective* assistance of counsel in a criminal prosecution. *People v. Connor*, 82 Ill. App. 3d 652, 657, 402 N.E.2d 862, 865 (1980). A defendant is not entitled to perfect representation, but competent representation is required. *People v. Eddmonds*, 101 Ill. 2d 44, 69, 461 N.E.2d 347, 359 (1984).

■ In *Strickland v. Washington*, the Supreme Court stated that in order to sustain a contention of the ineffective assistance of counsel, the accused must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) as a result, the accused suffered prejudice of a level so serious as to deprive the accused of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984) (adopted by Illinois in *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255 (1984)). To show this prejudice, the accused must establish that there is a rea-

sonable probability that, absent these errors, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1255. A court considers the totality of the circumstances, rather than isolated incidents, in making this decision. *Eddmonds*, 101 Ill. 2d at 69, 461 N.E.2d at 359.

■ Mere errors of judgment or trial strategy do not deny due process. *People v. Reid*, 179 Ill. 2d 297, 310, 688 N.E.2d 1156, 1162 (1997). If the alleged incompetency of an attorney is actually a matter of trial tactics or strategy, both of which are purely matters of professional judgment, such allegations cannot support a claim of ineffective assistance. *Reid*, 179 Ill. 2d at 310, 688 N.E.2d at 1162. The allegations of incompetency put forth by the accused must consist of more than a disagreement with the attorney's tactics or judgment. *People v. Williams*, 127 Ill. App. 3d 231, 235, 468 N.E.2d 807, 811 (1984). Trial strategy decisions, including which witnesses to call and what evidence to present, ultimately rest with trial counsel. *Reid*, 179 Ill. 2d at 310, 688 N.E.2d at 1162. The only exception to this rule is if trial counsel's chosen strategy is so unsound that counsel completely fails to conduct any meaningful adversarial testing. *Reid*, 179 Ill. 2d at 310, 688 N.E.2d at 1162.

■ Leeper offers at least six examples of Fricke's conduct to establish his claim of the ineffective assistance of counsel. Each of these bases falls in the category of either (1) trial strategy decisions appropriately made by counsel or (2) conduct not unreasonable enough to show that Leeper suffered prejudice from the claimed professional error.

First, Leeper alleges that Fricke improperly used the peremptory challenges during *voir dire*. It is clear, however, that the decision to use a peremptory challenge is generally considered to be a strategic decision. *People v. Wilson*, 303 Ill. App. 3d 1035, 1045, 710 N.E.2d 408, 416 (1999). Fricke waived a transcription of the *voir dire*. The appellant has the duty to present a complete record on appeal, and a reviewing court may not consider matters that are not contained in the record. *Hotze v. Daleiden*, 229 Ill. App. 3d 301, 305, 593 N.E.2d 564, 566 (1992). In addition, any doubt arising from the incompleteness of the record must be resolved against the party prosecuting the appeal. *People v. Davenport*, 133 Ill. App. 3d 553, 559, 479 N.E.2d 15, 20 (1985). Leeper has failed to show any evidence in the record to support his contention of the improper usage of peremptory challenges; thus, this basis cannot support the ineffective-assistance-of-counsel claim.

Second, Fricke failed to assert Leeper's right to be present when the judge dismissed one of the jurors. A defendant has a general right

to be present during all stages of the trial. *People v. Bean*, 137 Ill. 2d 65, 82, 560 N.E.2d 258, 265 (1990). As discussed with the preceding claim, however, it is required that the appellant present a complete record on appeal. *Hotze*, 229 Ill. App. 3d at 305, 593 N.E.2d at 566. There was some discussion in the record between Fricke and the judge regarding the effect of dismissing the juror. However, the record fails to show what other course the judge could have taken, assuming Fricke and Leeper were present, given the juror's attitude. In addition, the record fails to show that Fricke objected to or that Leeper was prejudiced by this action; therefore, this basis will not support the ineffective-assistance-of-counsel claim.

Third, Fricke failed to explore and pursue plea bargaining. An attorney's decision to initiate or pursue plea negotiations falls within the category of trial strategy or professional judgment. *People v. Vernon*, 276 Ill. App. 3d 386, 391, 657 N.E.2d 1117, 1122 (1995). Leeper provides no basis to show that a more favorable plea agreement could have been reached had Fricke attempted it; thus, this contention also cannot support the ineffective-assistance-of-counsel claim.

Fourth, Fricke failed to cross-examine the State's witness. The decision whether to cross-examine a witness is another matter of trial strategy. *People v. Pecoraro*, 175 Ill. 2d 294, 326, 677 N.E.2d 875, 891 (1997). This decision involves the exercise of counsel's professional judgment. *Pecoraro*, 175 Ill. 2d at 326, 677 N.E.2d at 891. Only if a defendant can prove that counsel's approach to cross-examination was *objectively* unreasonable can he prevail on an ineffective-assistance-of-counsel claim. *Pecoraro*, 175 Ill. 2d at 326, 677 N.E.2d at 891. At the March 18, 1999, hearing, Fricke explained his rationale for not cross-examining the witness. He stated that because the testimony had only lasted three minutes, any cross-examination would have only reinforced the same information. Fricke's failure to cross-examine the witness is clearly not objectively unreasonable and, thus, cannot sustain a claim of ineffective assistance of counsel.

Fifth, Fricke failed to offer any evidence on Leeper's behalf. Decisions regarding which witnesses to call and what evidence to present are also matters of trial strategy. *People v. Madej*, 177 Ill. 2d 116, 148, 685 N.E.2d 908, 924 (1997). Also, Fricke had clearly planned to present evidence, as evidenced in his opening statement when he said that Leeper would testify during the trial. It was only after Leeper decided not to cooperate and refused to testify on his own behalf that Fricke had no evidence to present. Although it is a defendant's personal decision whether to testify or not and that decision is not a strategic or tactical decision, what evidence to present remains a strategic decision. *Madej*, 177 Ill. 2d at 146, 685 N.E.2d at 923.

Sixth, Fricke made only a perfunctory opening statement and closing argument. Counsel is not required by law to make an opening statement at all. *Pietsch v. Pietsch*, 245 Ill. 454, 456-57, 92 N.E. 325, 326 (1910). Fricke's opening statement was short; however, it explained what Fricke, in his professional judgment, thought was necessary. Specifically, Fricke explained that the burden of proof was on the State and suggested that the jury listen carefully to both versions of the events. Fricke's closing argument was also short, but in light of the amount of evidence presented, it was satisfactory. Counsel is given great latitude in his or her closing argument to the jury. *Black v. Laggren*, 313 Ill. App. 3d 39, 44, 728 N.E.2d 1208, 1213 (2000). Fricke's closing argument again outlined the burden of proof and focused on a close analysis of the jury instructions. The contents of the opening statement and closing argument clearly lie within the professional judgment of counsel and, thus, cannot support a claim of ineffective assistance of counsel.

Leeper failed to show that Fricke's chosen strategy was so unsound that Fricke completely failed to conduct any meaningful adversarial testing. In addition, and perhaps more importantly, Leeper failed to show a reasonable probability that, but for Fricke's performance, the outcome of the trial would have been different. This failure means that Leeper failed to establish the second prong of the *Strickland* test. See *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Therefore, we conclude that the ineffective-assistance-of-counsel claim must fail.

### III. Additional Credit

■ Two distinct sections of the Unified Code of Corrections are at issue in this case. Section 5—8—7(b) of the Unified Code of Corrections provides that the offender shall be given credit for all the time served in incarceration as a result of the offense for which he or she is sentenced. 730 ILCS 5/5—8—7(b) (West 1992). In *People v. Latona*, 184 Ill. 2d 260, 270, 703 N.E.2d 901, 906 (1998), the court stated that the purpose of this statute was to ensure that offenders do not remain incarcerated for a period of time in excess of their eventual sentences. In *People v. Robinson*, 172 Ill. 2d 452, 463, 667 N.E.2d 1305, 1310 (1996), the court analyzed this provision and determined that the defendant should receive sentencing credit on both offenses for each day he spent in simultaneous custody.

Section 5—8—4(e)(4) of the Unified Code of Corrections specifically governs the calculation of consecutive sentences. *Latona*, 184 Ill. 2d at 270, 703 N.E.2d at 907. This section requires the Department of Corrections to treat consecutive sentences as a "single term" of

imprisonment. *Latona*, 184 Ill. 2d at 270-71, 703 N.E.2d at 907. This section impacts the application of sentencing credit.

In *Latona*, the court declared that section 5—8—4(e)(4) controls over section 5—8—7(b), which would otherwise, generally, apply to calculations of credit. *Latona*, 184 Ill. 2d at 270, 703 N.E.2d at 907. *Latona's* rationale is convincing. The court opined that it necessarily followed from treating consecutive sentences as a "single term" that offenders sentenced to consecutive sentences should only receive one credit for each day spent in custody as a result of the offense or offenses for which they are ultimately sentenced. *Latona*, 184 Ill. 2d at 271, 703 N.E.2d at 907. The other possible result, allowing an offender sentenced to consecutive sentences to receive two credits for each day, was not what the legislature intended. See *Latona*, 184 Ill. 2d at 271, 703 N.E.2d at 907.

Leeper claims that section 5—8—7(b) of the Unified Code of Corrections requires him to be given credit for the entire 242 days between the time of his arrest and the date of his sentencing, which includes the time for which he had been returned to the Department of Corrections for a parole violation. The State agrees with Leeper that he is entitled to one additional day of credit for August 8, 1998. The State argues, however, that under section 5—8—4(e)(4), Leeper should not receive credit for the time he served in the Department of Corrections for the parole violation. The court sentenced Leeper to serve six years' imprisonment as a result of his driving while license revoked, and that sentence is to be served *consecutively* to the time left on his parole violation.

The ruling of *Latona* is clear that giving credit to each offense of a consecutive sentence would be essentially giving an offender "double credit" for each day previously served. *Latona*, 184 Ill. 2d at 271, 703 N.E.2d at 907. If we followed *Robinson*, as Leeper argues, the result would be to give him this "double credit." See *Robinson*, 172 Ill. 2d 452, 667 N.E.2d 1305. Thus, we conclude that the mittimus needs to be corrected to reflect one additional day of credit toward Leeper's sentence, for August 8, 1998, and that the trial court properly declined to award Leeper sentencing credit for the time spent in the custody of the Department of Corrections for his parole violation.

## CONCLUSION

We conclude that the trial court properly exercised its discretion in denying Leeper's request for self-representation. In addition, Leeper's ineffective-assistance-of-counsel claim fails, and the trial court properly declined to award Leeper sentencing credit for the time spent in the custody of the Department of Corrections for his parole violation.

We affirm Leeper's convictions and sentences, but we order that the judgment order and the mittimus be amended to reflect one additional day of credit toward the defendant's sentence.

Affirmed as modified; cause remanded with directions.

WELCH and MAAG, JJ., concur.