NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250970-U

NO. 4-25-0970

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 12, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| ERIANAH D. KING, | ) | No. 25CF251 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul E. Bauer, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, holding the trial court did not err by denying
defendant pretrial release.

¶ 2     Defendant, Erianah D. King, appeals the trial court's order denying her pretrial

release. Defendant argues that the court erred by determining the State had proven (1) the proof

was evident or presumption great that she committed a detainable offense, (2) she posed a real or

present threat to the safety of the community, and (3) such threat could not be mitigated by any

conditions or combination of conditions of pretrial release. Defendant also argues she is not

required to show a change in circumstances before filing a motion for relief. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4     On June 20, 2025, the State charged defendant with armed robbery (720 ILCS

5/18-2(a)(2) (West 2024)) in that she, while armed with a firearm, took money from the person

or presence of Jean Real by the use of force or threatening the imminent use of force. That same day, the State filed a verified petition to deny defendant pretrial release. The petition alleged that defendant was charged with a qualifying offense and her pretrial release posed a real or present threat to the safety of any person or persons or the community.

¶ 5        On June 23, 2025, a detention hearing was held. The trial court stated it would take judicial notice of a pretrial services report that had been filed. (This report does not appear in the record on appeal.). The court also indicated it would take judicial notice of a pending juvenile case against defendant in which she had been charged with battery and aggravated battery of a school employee.

¶ 6        The State proffered that at approximately midnight on the night of the incident, police officers responded to a report of an armed robbery. Real advised officers that he and his friend went to buy a car he had seen advertised on Facebook. The seller told him he needed to give her the money before she showed him where the car was. He refused, and the seller pulled out a handgun and grabbed $600 out of Real's hand, which he had brought to purchase the car. Officers identified defendant as the suspect based on the Facebook profile of the seller. Real identified defendant out of a six-person photographic lineup. A video recording of the incident was captured. The State asserted that, on the video, "[y]ou could not see very specifically that it was a handgun in her hand, but you could see her gesturing in ways which matched with [how] *** the victim described." Police officers interviewed defendant, and she initially denied ever meeting with Real. When confronted with video evidence, she admitted to meeting with Real but claimed she only had a BB gun. She eventually admitted that she had been armed with a real handgun. Police obtained a search warrant and located a handgun in defendant's residence that matched the description given by Real.

¶ 7        The State argued that defendant should be detained. The State contended that defendant's action in brandishing a weapon at the victim showed she could not be trusted to comply with rules. The State asserted:

> "[D]efendant's been on pretrial release in—or pending juvenile matter for quite a while, and that's because she never showed up to court. It's actually a fairly old case, but she has been on warrant status for more than a year. She failed to comply with court orders and show up to court on that matter."

The State acknowledged that defendant had no prior convictions.

¶ 8        Defense counsel argued that defendant should be released with conditions. Counsel asserted that defendant was 19 years old, had scored 3 out of 14 on a pretrial risk assessment instrument, and had a minimal criminal history. Counsel argued that defendant had a job, was starting classes soon, and had family in the area.

¶ 9        The trial court found the State had proven by clear and convincing evidence that the proof was evident or presumption great that defendant had committed the charged offense, which the court found qualified for pretrial detention. The court also found the State had proven by clear and convincing evidence that defendant posed a real or present threat to the safety of the community and that no condition or combination of conditions of pretrial release could mitigate this threat. The court noted that defendant's action of "holding up someone for money with a gun" was reckless and dangerous for both the victim and defendant. The court stated it was such a dangerous act that no condition or combination of conditions could guard against the threat defendant posed. The court noted that defendant was on "warrant status" in her pending juvenile case for failing to appear at court hearings. The court acknowledged that defendant had a low score on the pretrial risk assessment instrument and was working but found these considerations

"pale[d] in comparison" to the threat she posed to the community.

¶ 10    On August 21, 2025, defendant filed a motion for relief, which alleged it was "not clear what property Defendant took from the victim with the use of force or threat of force." Defendant further asserted that there was no compelling evidence that she posed a threat to Real or the community at large. Defendant asserted that her only prior offense was a speeding ticket, she had been employed, and she had family in the area. Defendant also asserted that "this scenario is not likely to repeat itself" due to the "peculiar and uncommon fact pattern." Defendant suggested the trial court could impose a curfew, order her to stay away from firearms, order her to have no contact with the alleged victim, or order home confinement.

¶ 11    A hearing was held on the motion for relief on the same day it was filed. Defense counsel noted that defendant's mother and other family members lived in the area and argued she was not a flight risk. Counsel asserted that defendant had only one speeding ticket as an adult. Counsel argued that the alleged offense involved a misunderstanding concerning the sale of a car, which was an unusual situation that was unlikely to recur. Counsel proposed that the trial court release defendant with a curfew, an order to "stay away from firearms," and an order not to have contact with the alleged victim. Alternatively, the court could place defendant on home confinement.

¶ 12    The State asserted that it believed a motion for relief had to show a change in circumstances and asserted that defendant's motion for relief was really a motion to reconsider. The State argued there had been no change in circumstances because everything defense counsel had said about defendant was contained in the pretrial report. The trial court then asked defense counsel what the change in circumstances was from the original detention order. The following exchange occurred:

"MR. ANDERSON [(DEFENSE COUNSEL)]: So this is a—I think, a problem that we're—I've been having, at least in this circuit. On one hand, they have made that ruling in at least one case, that there needs to be a change in circumstances, or the judge really should consider it if there's been a change in circumstances, but then when you go on appeal, they'll say that anything that's not filed as a Motion for Relief is deemed waived. So how do—how do I know what's waived or not waived, unless I just do the Motion for Relief and then send it up to them on appeal?

THE COURT: And not only that, the [SAFE-T] Act does require that, at each court appearance, we reevaluate the detention status. Correct?

MS. SHELBY [(ASSISTANT STATE'S ATTORNEY)]: Yes, but they— but the Appellate Court then came in and said, but it needs to be a change in circumstance to review it. That's by case law."

¶ 13    The State then discussed the factual basis for the offense. The State asserted that Real and his friend, who were both Spanish-speaking, arranged through Facebook Marketplace to meet defendant at the apartment complex where she lived to purchase a car from her. When they arrived in the parking lot, they looked for the car but could not find it. Defendant told them they needed to pay her before she showed them the car. They told defendant they wanted to test drive the car before they gave her the money. Defendant began to look nervous and stated she needed the money first. They refused, and she "pulled a b[l]ack handgun with an extended magazine out and pointed it at them." She also "racked" the gun. She then yanked the cash out of their hands. They got back into their car, and defendant walked into the apartment building. Real and his friend called the police, and the police took their statements. The police identified

defendant as the suspect through Facebook data. Real did not identify defendant in a photographic lineup, but his friend did. The State indicated that the officers viewed surveillance video from the apartment complex that captured the incident. The video showed defendant removing something from her waistband and Real and his friend immediately getting into their car and driving away. Officers obtained a search warrant and located a handgun and extended magazine in defendant's residence.

¶ 14 Defense counsel stated that he did not have the discovery yet because he had just entered his appearance but argued the incident was "nothing more than a disagreement about how [they were] going to finalize [the sale of the car]." Counsel noted that the victim did not speak English.

¶ 15 The State argued that there was no change in circumstances that had been presented, defendant was a danger, and she should be detained. The State noted defendant was not compliant with her juvenile case and had outstanding warrants.

¶ 16 The trial court stated it found that there had been no change in circumstances and that defendant's continued detention was necessary to "avoid a real and present threat to the safety of any person or persons of the community based on the specific attributable facts of the case as outlined by the State, presently, and as well as at the time of the original detention." The court then advised defendant she had the right to appeal. This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18 On appeal, defendant has filed a supplemental memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). In the memorandum, defendant argues that facts of the case were "hotly debated." She asserts in the memorandum that the alleged victim attempted to obtain the car for less money than she was willing to sell it for, both parties became

"agitated," and she displayed a weapon when she felt her safety was being threatened. She states that she did not ask for or receive any property from the alleged victim. Further, she argues that "[s]ome discovery ha[d] come to light" since the hearing on her motion for relief, and defendant proceeded to recount alleged Facebook messages that she exchanged with the victim.

¶ 19    In the memorandum, defendant argues that the trial court erred by finding (1) the proof was evident or the presumption great that she committed the alleged offense, (2) she posed a real and present threat to the safety of the community, and (3) no condition or combination of conditions of release could mitigate this threat. She also argues she was not required to show a change in circumstances before filing a motion for relief.

¶ 20                                    A. Forfeiture

¶ 21    Initially, the State argues that defendant has forfeited her arguments on appeal by failing to comply with the requirements of Rule 604(h) because her motion for relief contained no citations to the record or relevant authority, and her memorandum contained no citations to the record and only minimal citations to authority. The State also contends that it was inappropriate for defendant to discuss in her memorandum Facebook messages that were not presented to the trial court at the hearing on the motion for relief.

¶ 22    Rule 604(h)(2) states that "[a]s a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Rule 604(h)(7) states, in relevant part, the following:

> "The motion for relief will serve as the argument of the appellant on appeal, The appellant may file, but is not required to file, a memorandum not exceeding 4500 words, within 21 days of the filing of the record on appeal. Issues raised in the motion for relief are before the appellate court regardless of whether the optional

memorandum is filed. If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal. Whether made in the motion for relief alone or as supplemented by the memorandum, the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 23 We decline to find defendant's arguments forfeited. We find that the motion for relief as supplemented by the memorandum contained sufficient detail to enable meaningful appellate review of defendant's contentions and contained sufficient references to relevant authority. We agree with the State that defendant failed to include citations to the record in either the memorandum or the motion for relief. However, the record in this case is brief, and we find that our review is not impeded by defendant's failure to include citations to the record.

¶ 24 We also agree with the State that defendant improperly included factual information, including purported Facebook messages, in the memorandum that was not presented to the trial court. See *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009) ("A party may generally not rely on matters outside the record to support its position on appeal.").We will not consider the alleged Facebook messages recounted in the memorandum or any other factual information contained therein that was not presented to the trial court. *People v. Leeper*, 317 Ill. App. 3d 475, 482 (2000) ("[A] reviewing court may not consider matters that are not contained in the record."); see *Keener*, 235 Ill. 2d at 346 (holding that when a party's brief relies on matters outside the record, the reviewing court may simply disregard the inappropriate material).

¶ 25 B. Change in Circumstances

¶ 26 In her memorandum, defendant argues that a defendant is not required to show a change in circumstances when asking the trial court to review pretrial detention in the form of a motion for relief. Defendant argues that our decision in *People v. Walton*, 2024 IL App (4th) 240541, should not be interpreted as barring defendants from requesting a "detention review" until they can demonstrate a change in circumstances. We note that the trial court and the parties appeared to be confused about this issue at the hearing on the motion for relief, so we address it briefly.

¶ 27 As a prerequisite to filing an appeal from an order denying pretrial release, a defendant is required to file a motion for relief "requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The motion for relief later serves as the appellant's argument on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). The purpose of the motion for relief is to identify errors that occurred in the detention proceeding, give the trial court the opportunity to correct any such errors, and frame the issues for appeal. *People v. Patterson*, 2025 IL App (1st) 250510, ¶¶ 18-19. Neither Rule 604(h) nor the case law interpreting it requires a defendant to show a change in circumstances when challenging a court's initial detention decision in a motion for relief.

¶ 28 Separate from the process for challenging an initial detention order in a motion for relief, when a defendant has been denied pretrial release, section 110-6.1(i-5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(i-5) (West 2024)) requires the trial court at each subsequent appearance to "find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." This court held in *Walton* that a defendant is required to present new information or show a change in

circumstances to obtain relief under section 110-6.1(i-5). *Walton*, 2024 IL App (4th) 240541,

¶ 28. A motion for relief was not at issue in *Walton*, and the holding in *Walton* does not apply to

a proceeding on a motion for relief from an initial detention order.

¶ 29     Here, at the hearing held on August 21, 2025, the trial court was tasked with both

ruling on defendant's motion for relief challenging the initial detention order and making a

determination pursuant to section 110-6.1(i-5) as to whether her continued detention was

necessary to avoid a real and present threat to the safety of the community. To the extent the

court required defendant to show a change in circumstances in the proceedings on her motion to

relief, the court erred.

¶ 30     However,

> "[i]t is a fundamental principle of appellate law that when an appeal is taken from
>
> a judgment of a lower court, [t]he question before [the] reviewing court is the
>
> correctness of the result reached by the lower court and not the correctness of the
>
> reasoning upon which that result was reached." (Internal quotation marks
>
> omitted.) *People v. Johnson*, 208 Ill. 2d 118, 128 (2003).

Accordingly, "this court can affirm a trial court's ruling based on any reason supported by the

record, regardless of the trial court's reasoning." *People v. Roa*, 2024 IL App (4th) 241051, ¶ 28.

For the reasons, that follow, we find the trial court did not err in ordering defendant detained

prior to trial.

¶ 31                    C. Detention Determination

¶ 32     Defendant argues that the trial court erred by ordering her detained prior to trial

because the State failed to prove that (1) the proof was evident or the presumption great that she

committed the charged offense, (2) she posed a real or present threat to the safety of the

- 10 -

community, and (3) no condition or combination of conditions could mitigate this threat.

¶ 33    "Illinois law now presumes all defendants are eligible for pretrial release." *People v. Morgan*, 2025 IL 130626, ¶ 24; 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024). However, the trial court may deny pretrial release when the State files a verified petition and proves by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate this threat. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024); see *Morgan*, 2025 IL 130626, ¶ 24. "Decisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2024).

¶ 34    Where, as in the instant case, the parties proceeded solely by proffer in the trial court, the standard of review is *de novo*. *Morgan*, 2025 IL 130626, ¶ 51. In such a situation, "the reviewing court stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature." *Id.*

¶ 35    1. *Proof Evident or Presumption Great That Defendant Committed Offense*

¶ 36    Defendant contends the State failed to establish that the proof was evident or the presumption great that she committed the charged offense because there is no sound on the video recording of the incident, and the video does not show defendant taking money from the victim. Defendant contends that the matter rests solely on the victim's claims, but the victim was not trustworthy because he did not tell the police that he tried to "haggle the price down" and did not

bring enough money to pay for the car.

¶ 37    Section 18-2(a)(2) of the Criminal Code of 2012 (720 ILCS 5/18-2(a)(2) (West 2024)) provides that a person commits armed robbery by knowingly taking property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a firearm. Armed robbery is a detainable offense pursuant to section 110-6.1(a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2024)).

¶ 38    Here, the State proved by clear and convincing evidence that the proof was evident or the presumption great that defendant committed the offense of armed robbery. According to the State's proffer, Real reported that he arranged to purchase a car from defendant on Facebook Marketplace. When Real and his friend arrived at the location where they agreed to meet her, she demanded they give her the money before she showed them the car, and they refused. She then pulled out a handgun and grabbed the money. They got back in their car and drove away. Either Real or his friend (the State's proffers were inconsistent on this point) identified defendant in a photographic lineup, and a firearm matching the description of the one used in the incident was later found at defendant's residence. Also, the State asserted that a video recording showed defendant gesturing in ways consistent with the descriptions of the offense given by Real and his friend.

¶ 39    Defendant argues on appeal that the video recording was "inconclusive" because there was no sound and it did not show defendant taking money from the alleged victim. While the State discussed the video in the trial court, it does not appear that it was entered into evidence as an exhibit, and it was not included in the record on appeal. Accordingly, we cannot assess defendant's arguments concerning what the video did or did not show. Moreover, the State's claim in the trial court was that the video showed defendant gesturing in a manner that was

consistent with the description of the events given by Real and his friend, not that it showed the gun or money.

¶ 40 Defendant's claim on appeal that Real was untrustworthy due to his failure to tell the police that he attempted to negotiate a lower price and failed to bring enough money to pay for the car is based on factual statements and purported Facebook messages that defendant included in her memorandum but failed to present to the trial court. Accordingly, we will not consider this argument. See *Keener*, 235 Ill. 2d at 346.

¶ 41 2. *Real and Present Threat to the Safety of the Community*

¶ 42 Defendant argues that the trial court erred by determining that she poses a real and present threat to the safety of the community because she does not have an extensive criminal history and had a low score on the pretrial risk assessment.

¶ 43 Section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2024)) sets forth a nonexhaustive list of factors that courts may consider in determining whether a defendant poses a real or present threat to any person or persons or the community, including (1) the nature and circumstances of the charged offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whose safety the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim; (7) whether the defendant was known to possess or have access to any weapon; (8) whether, at the time of the current offense, the defendant was on any type of release from custody pending trial, sentencing, appeal, or completion of a sentence for an offense under federal or state law; and (9) any other factor deemed by the court to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior or lack of such behavior.

¶ 44　　　　We find the trial court did not err by determining that defendant poses a real and present threat to the safety of the community. While defendant asserts that she does not have an extensive criminal history and received a low score on a pretrial risk assessment instrument, the nature and circumstances of the charged offense established that she poses a danger to the community. The State's proffer indicated that defendant used Facebook Marketplace to arrange a purported sale of a car with a stranger from the community and robbed him at gunpoint when he came to meet her. Defendant's alleged actions were extremely dangerous. The State's proffer also showed that defendant had access to a firearm and was on "warrant status" in a juvenile case for an extended period of time prior to the commission of the charged offense.

¶ 45　　　　　　　　　　3. *Conditions of Release*

¶ 46　　　　Defendant argues the trial court erred by finding that no condition or combination of conditions of pretrial release could mitigate the threat she posed to the safety of the community. She contends that the State relied almost exclusively on her juvenile record when arguing she should be denied pretrial release and asserts that "[i]t is, or should be, improper to rely on a juvenile record." She argues that the court could have ordered a curfew with electronic monitoring, that she refrain from possessing guns, and/or home confinement to address any concerns it may have had about her access to guns and ability to make responsible decisions.

¶ 47　　　　Section 110-5(a) of the Code (*id.* § 110-5(a)) provides that, in determining which conditions of pretrial release, if any, will reasonably ensure the safety of the community and the likelihood of compliance by the defendant with all the conditions of pretrial release, the court shall consider factors, including, *inter alia*, the nature and circumstances of the offense, the weight of the evidence against the defendant, and the history and characteristics of defendant. In considering a defendant's history and characteristics, the court is to consider, *inter alia*,

- 14 -

"whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." *Id.* § 110-5(a)(3)(B).

¶ 48       Here, we find the trial court did not err by determining that no condition or combination of conditions could mitigate the real and present threat defendant posed to the safety of the community. As we have discussed, the offense in this case was very serious, as it involved defendant targeting a stranger from the community and robbing him at gunpoint. While defendant suggests conditions of release that could have been imposed, we note there was evidence that she was on "warrant status" at the time of the instant offense for failing to appear in a juvenile case. The evidence of defendant's noncompliance with orders in her juvenile case indicates an inability or unwillingness to comply with court orders. See *People v. Bueno*, 2024 IL App (2d) 240053, ¶ 13 ("[T]he court is tasked with considering not just whether conditions short of detention exist, but also whether a defendant is likely to *comply* with them." (Emphasis in original.)) While defendant argues that "[i]t is, or should be, improper to rely on a juvenile record," she has cited no authority supporting her contention that the court considered improper evidence. Moreover, as defendant was 19 years old at the time of the charged offense, her failure to comply with court orders in the juvenile case occurred when she was an adult.

¶ 49                           III. CONCLUSION

¶ 50       For the reasons stated, we affirm the trial court's judgment.

¶ 51       Affirmed.