THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Respondent-Appellee,
v. GORDON VERNON, Defendant-Petitioner-Appellant.

First District (6th Division)   Nos. 1—92—3604, 1—95—0789 cons.

Opinion filed November 9, 1995.

Ronald D. Haze, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Judy DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ZWICK delivered the opinion of the court:

Defendant, Gordon Vernon, appeals from a judgment entered by the circuit court of Cook County following a jury verdict of guilty on charges of attempted first degree murder, aggravated battery with a firearm and aggravated battery. The trial court sentenced defendant to a term of 20 years' incarceration. Defendant also appeals a subsequent order dismissing his petition for post-conviction relief. We consolidated both appeals. We address the question of whether sections 3—2(b) and 6—2(e) of the Illinois Criminal Code of 1961 (720 ILCS 5/3—2(b), 6—2(e) (West 1992)), placing the burden of proving insanity by a preponderance of the evidence upon the defendant, violated defendant's constitutional right to equal protection. We also review the question of whether defendant's petition for post-conviction relief was frivolous and patently without merit.

The facts of this case can be briefly stated. Defendant was charged with shooting his former girlfriend, Sandra Bennett, outside her residence on December 4, 1990. Bennett had recently broken off their relationship and had secured a court order of protection against the defendant. On the day of the shooting, defendant approached Bennett's car on foot as she sat in the driver's seat of her vehicle. Defendant began telling her that he wanted a "second chance." When Bennett told the defendant that their relationship was over, defendant shot her several times, telling her that she "would never do this to anyone again."

At trial, defendant asserted the defense of insanity and presented the testimony of his sister, Orleans Faibvre. Faibvre testified that defendant was "not normal" following his breakup with Bennett. Faibvre said that she attempted to get defendant to see a psychiatrist, but that he failed to keep any of the appointments she had made for him. Defendant would not eat or bathe himself. He would sit for long periods of time in a dark room, alone. He told Faibvre that he "had nothing to live for."

The jury heard conflicting expert testimony regarding the issue of defendant's sanity. Psychiatrist Carmon Dunigan testified that he believed defendant was insane at the time of the shooting. Dr. Dunigan noted that the defendant was severely depressed with psychotic features, paranoid, anorexic, insomniatic and suicidal. The prosecution's expert witness, Dr. Gerson Kaplan, disagreed with Dunigan's opinion, stating that there was no evidence that the defendant was

psychotic. Dr. Kaplan admitted defendant may have had a depressive disorder at the time of the shooting, but stated that it did not rise to the level of insanity.

Prior to deliberations, the jury was instructed with Illinois Pattern Jury Instructions, Criminal, No. 2.03B, which stated, in pertinent part:

"The defense of insanity has been presented during the trial. The burden of proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity. However, the burden remains on the State to prove beyond a reasonable doubt each of the elements of each of the offenses charged." (Illinois Pattern Jury Instructions, Criminal, No. 2.03B (3d ed. 1992).)

This instruction was based upon the requirements of section 3—2(b) and section 6—2(e) of the Code. 720 ILCS 5/3—2(b), 6—2(e) (West 1992).

Defendant first argues that the provisions of sections 3—2(b) and 6—2(e) of the Code are unconstitutional in that they violate equal protection. (U.S. Const., amend XIV; Ill. Const. 1970, art. I, § 2.) Specifically, he argues that these provisions impermissibly discriminate against defendants who raise the insanity defense because other provisions of the Code which deal with affirmative defenses do not require the defendant to meet a similar burden of proof.

Section 3—2(b) of the Code states in pertinent part:

"If the issue involved in an affirmative defense, other than insanity, is raised [by the defendant] then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. If the affirmative defense of insanity is raised, the defendant bears the burden of proving by a preponderance of the evidence his insanity at the time of the offense." (720 ILCS 5/3—2(b) (West 1992).)

Similarly, section 6—2(e) states:

"When the defense of insanity has been presented during the trial, the burden of proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of each of the offenses charged, and, in a jury trial where the insanity defense has been presented, the jury must be instructed that it may not consider whether the defendant has met his burden of proving that he is not guilty by reason of insanity until and unless it has first determined that the State has proven the defendant guilty beyond a reasonable doubt of the offense with which he is charged." (720 ILCS 5/6—2(e) (West 1992).)

Defendant argues that his claim creates an issue of first impression in Illinois.

We begin our analysis of defendant's equal protection claim by noting the strong presumption of constitutionality which attaches to enactments of the General Assembly and the rule that all doubts regarding the constitutionality of a statute must be resolved in favor of the statute's validity. (*People v. Esposito* (1988), 121 Ill. 2d 491, 497, 521 N.E.2d 873.) In considering an equal protection claim, we employ a two-step analysis to determine whether a legislative classification is constitutional. (*People v. Adams* (1990), 198 Ill. App. 3d 74, 84, 555 N.E.2d 761.) The test is the same under both the Federal and the State Constitutions. (*Pre-School Owners Association v. Department of Children & Family Services* (1988), 119 Ill. 2d 268, 275, 518 N.E.2d 1018.) First, we must determine whether the statute in question affects either a fundamental right or discriminates against a suspect class. (*Adams*, 198 Ill. App. 3d at 84.) In this instance, we must apply the "strict scrutiny" test, which upholds the legislation only if it is "narrowly tailored to serve[ ] a compelling State interest." (*People v. Shephard* (1992), 152 Ill. 2d 489, 500, 605 N.E.2d 518.) If the challenged statute does not affect a fundamental right or discriminate against a suspect class, we apply the more lenient "rational basis" test. This test upholds the legislation if it bears a rational relationship to a legitimate statutory objective. (*People v. Reed* (1992), 148 Ill. 2d 1, 7, 591 N.E.2d 455.) We will uphold the legislation if any set of facts can reasonably be conceived which would sustain the classification. *Opyt's Amoco, Inc. v. Village of South Holland* (1992), 149 Ill. 2d 265, 275, 595 N.E.2d 1060.

Although the defendant is technically correct that his specific equal protection claims have not been addressed by an Illinois opinion, his claim that the issue is one of first impression is misleading. The defendant concedes that the statute does not affect a fundamental right or a suspect class. The proper analysis under the equal protection clause is therefore the rational basis test. (See *Esposito*, 121 Ill. 2d at 500.) We note that this is the *identical* analysis as applied to the statute in considering whether the statute comports with due process. (See *People v. R.G.* (1989), 131 Ill. 2d 328, 362, 546 N.E.2d 533.) Sections 3—2(b) and 6—2(e) have withstood due process scrutiny in Illinois.

In *People v. Scott* (1992), 148 Ill. 2d 479, 594 N.E.2d 217, our supreme court held that requiring a defendant to prove insanity does not violate due process. (*Scott*, 148 Ill. 2d at 540-43.) Defendant concedes this point, but notes that the *Scott* court did not discuss what rational basis the General Assembly might have had for

distinguishing the insanity defense from defenses such as involuntary intoxication (720 ILCS 5/6—3 (West 1994)), justifiable use of force (720 ILCS 5/7—1 (West 1994)), compulsion (720 ILCS 5/7—11 (West 1994)), entrapment (720 ILCS 5/7—12 (West 1994)) or necessity (720 ILCS 5/7—13 (West 1994)).

In enacting the change to Illinois' insanity law, it is clear that the General Assembly acted out of concern that the insanity defense had become too easy to raise and too difficult to disprove. Prior to the change in the law, once defendant offered any evidence of insanity, the State had to shoulder the burden of proving defendant's sanity beyond a reasonable doubt. In the early 1980s, however, there was widespread criticism of the defense and fear that violent offenders could easily thwart justice by fabricating an insanity claim. In addition, as defendant concedes, part of the General Assembly's motivation may have been a concern that those committed to psychiatric care after successfully raising an insanity defense could be released into society to again commit criminal acts. One State representative who spoke before the General Assembly in support of the legislation noted that the statute would also help prevent tragedies such as that reported in a Newsweek magazine story wherein a defendant successfully raised the insanity defense and later escaped psychiatric confinement. While at large he committed several gruesome murders. 83d Ill. Gen. Assem., House Proceedings, June 21, 1983, at 136 (Comments of Representative Johnson); J. Alter, *Nightmare in California*, Newsweek, June 20, 1983.

Defendant responds that such "precautionary measures *** were more appropriate in a day before the advent of psychiatric medication" and "before modern-day advances in the identification and treatment of mental illness." Even so, it is not the function of this court to decide which approaches to public safety issues are "more appropriate," so long as the legislation at issue embodies a rational approach to a perceived problem. Representative Johnson stated on the floor of the House that the changes now at issue were "a modest and reasonable step towards *** putting an out of control defense in some sort of meaningful control." (83d Ill. Gen. Assem., House Proceedings, June 21, 1983, at 136 (Comments of Representative Johnson).) The legislation passed by an overwhelming vote. We will not substitute our judgment for that of the General Assembly.

Because we cannot conclude that the decision to require a defendant to prove his insanity by a preponderance of the evidence is an irrational one, we find the challenged statute to comport with defendant's equal protection rights. We reject defendant's claims to the contrary.

■ We next turn our attention to defendant's post-conviction claims that his counsel was ineffective in his representation of defendant during his sentencing hearing.

The Post-Conviction Hearing Act (725 ILCS 5/122—1 (West 1994)) provides a remedy to criminal defendants who have had substantial violations of their constitutional rights during their criminal trial. (*People v. Owens* (1989), 129 Ill. 2d 303, 307, 544 N.E.2d 276.) A post-conviction proceeding is not an appeal *per se*, but a collateral attack upon a final judgment. (*Owens*, 129 Ill. 2d at 308.) A defendant is entitled to an evidentiary hearing for his post-conviction petition only when he makes a substantial showing that his constitutional rights were violated and the record or accompanying affidavits support the allegations in the petition. (*Owens*, 129 Ill. 2d at 308.) The circuit court may summarily dismiss the petition if it is deemed "frivolous" or "patently without merit." (725 ILCS 5/122—2.1(a)(2) (West 1994).) We review the trial court's decision to dismiss a post-conviction petition under an abuse of discretion standard. *People v. Dean* (1992), 226 Ill. App. 3d 465, 467, 589 N.E.2d 888.

In order for defendant to succeed on an ineffective assistance of counsel claim, he must show: (1) that his counsel's performance fell below an objective standard of competence; and (2) that but for counsel's unprofessional errors, the result would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Hall* (1993), 157 Ill. 2d 324, 337, 626 N.E.2d 131.

The trial court did not abuse its discretion in ruling on defendant's post-conviction petition because an examination of defendant's petition shows that it was frivolous and patently without merit. In his petition, defendant states that he first requested that his attorney enter into plea negotiations with the State but that his counsel advised him against such negotiations. Defendant alleges that, because he trusted his attorney's judgment and did not know an insanity claim would be unlikely to succeed, he did not insist on plea negotiations.

It is well settled that an attorney's decision to initiate or pursue plea negotiations may legitimately fall within the realm of trial strategy or professional judgment. (See *People v. Palmer* (1994), 162 Ill. 2d 465, 475-81, 643 N.E.2d 797.) A defendant does not have a constitutional right to be offered the opportunity to plea bargain (*Palmer*, 162 Ill. 2d at 476-77), and counsel's deliberate decision to advise his client against pursuing negotiations is one that will not be reviewed with hindsight (*Palmer*, 162 Ill. 2d at 477).

Defendant's petition also alleges that his counsel, during the sentencing hearing, was ineffective for failing to more strongly seek a

continuance. During the course of the proceedings there was a bomb scare in the courthouse and several of the witnesses defendant planned to offer in mitigation left without testifying. The trial court denied counsel's request that the proceedings be held over until the witnesses could be called back to testify. Defendant argues, however, that counsel did not vigorously pursue this request. Defendant also contends that his counsel was ineffective for his decision not to call several witnesses who would have offered supporting mitigation testimony.

Defendant's arguments that his counsel should have argued more forcefully for a continuance was a claim that could have been raised during defendant's direct appeal and was therefore waived in the post-conviction proceedings. It is settled law that post-conviction proceedings are limited to matters that have not been, and that could not have been, previously adjudicated. (See *People v. Stewart* (1988), 123 Ill. 2d 368, 528 N.E.2d 631.) "[W]here all of counsel's alleged trial errors and other facts relating to the issue of incompetency of his representation appear on the face of the record, that issue could properly be deemed *res judicata.*" (*People v. Gaines* (1984), 105 Ill. 2d 79, 91, 473 N.E.2d 868. See also *People v. Thompkins* (1994), 161 Ill. 2d 148, 175, 641 N.E.2d 371.) In such a case, the trial court is authorized to summarily dismiss defendant's claims. *People v. Green* (1991), 218 Ill. App. 3d 71, 75, 578 N.E.2d 169.

Defendant's remaining claims are also without merit. Defendant relies upon the affidavits of his daughter, Portrice Vernon, and his sister, Orleans Faibvre, as well as three retired Chicago police officers. These witnesses were apparently witnesses counsel did not plan on calling to the witness stand during the sentencing hearing. Defendant's petition argues that his counsel was ineffective for not calling these witnesses to offer mitigation testimony. Defendant also claimed his counsel was ineffective for failing to call a clergyman for whom he had done work in the past who would have been willing to testify favorably regarding his character.

Counsel's decision on whether to present a particular witness is a matter of trial strategy. (*People v. Franklin* (1990), 135 Ill. 2d 78, 116-17, 552 N.E.2d 743.) The testimony defendant now claims should have been presented to the trial court in mitigation was cumulative of evidence already before the court. We note that defendant's counsel presented the testimony of attorney Muriel Farmer, who had submitted a character letter on defendant's behalf and who stated that following his divorce from his former wife, defendant had remained a "happy go lucky" person; had paid for his child's support; had no criminal record; and that defendant was not a violent person. Defense

counsel also submitted an offer of proof following the bomb scare in which he stated that he had more witnesses who could testify on defendant's behalf and that these persons had known defendant for a long time and that he had been a person of good character. Counsel also submitted letters written by members of the community requesting that the defendant's sentence be merciful and explaining that defendant was a "very good person," an "excellent worker," "honest," a "real gentleman," and "willing to assist others *** [in] his community."

Because it is clear that the testimony defendant claims should have been offered was cumulative to that evidence already in the record, defendant cannot make out a claim that his counsel was incompetent. See generally *People v. Caballero* (1989), 126 Ill. 2d 248, 533 N.E.2d 1089 (counsel can reasonably ignore mitigating evidence that is cumulative); *People v. Jackson* (1990), 200 Ill. App. 3d 92, 557 N.E.2d 1287 (where defense counsel's failure to present the testimony of defendant's parents and past friends was deemed to be trial strategy and defendant suffered no prejudice therefrom).

Because the record demonstrates the issues raised in defendant's post-conviction petition are without merit, we cannot find the trial court's decision to dismiss the petition to have been erroneous. We affirm the court's ruling.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

McNAMARA, P.J., and RAKOWSKI, J., concur.