2021 IL App (2d) 200030-U
No. 2-20-0030
Order filed September 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10-CF-638 |
| TYRONE D. WATT, | ) ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court applied the correct standard for reviewing ineffective assistance claims at the first stage of postconviction proceedings. Further, the appellate court on *de novo* review held defendant's postconviction petition was properly dismissed under *Strickland v. Washington*.

¶ 2   Following a jury trial, defendant, Tyrone D. Watt, was convicted of one count of home invasion (720 ILCS 5/12-11(a)(2) (West 2010)), one count of armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)), and one count of aggravated kidnapping (720 ILCS 5/10-1(a)(1) (West 2010)). The trial court sentenced defendant to concurrent terms of imprisonment of 26 years for home invasion, 26 years for armed robbery, and 18 years for aggravated kidnapping. On direct

appeal, this court affirmed defendant's convictions but modified the mittimus to reduce certain fines, fees, and costs. See *People v. Watt*, 2013 IL App (2d) 120183, ¶¶ 51, 54. On July 3, 2019, defendant, through counsel, filed a postconviction petition, alleging in relevant part that his trial counsel was ineffective for failing to introduce documentary evidence or testimony at trial regarding the source of the money found on defendant at the time of his arrest. The trial court summarily dismissed the petition, finding that the claims were frivolous and patently without merit. Defendant appeals. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4     The following evidence was adduced at trial. On February 23, 2010, Domonique Kyle lived at 1030 Lakehurst Drive in Waukegan. She was pregnant. Her boyfriend, Gino Adams, and his two-year-old daughter often stayed there. At approximately 10 p.m., Adams left the apartment. Kyle was in bed when Adams returned around midnight, picked up his daughter, and left again. A short while later, Kyle was awakened by voices outside of her bedroom door. Four masked men—defendant, George Bates, Roger Golden, and Kevin Martin—had just broken into her apartment.

¶ 5     Three of the men appeared at her bedroom door and two of them entered her bedroom. They asked Kyle where the money and the "work" were. According to Kyle, "work" meant drugs. One of the men had a revolver. That man went through Kyle's dresser and asked her for jewelry. The other man went through her armoire. The unarmed man ordered Kyle off the bed and flipped her mattress. Upon finding nothing under the mattress he stated, "So you going to lie to me, bitch," and punched her in the left eye.

¶ 6     Kyle had between $4000 and $5000 in cash on her dresser, which the men took. The three men led Kyle into the kitchen where a fourth masked man was standing. While ransacking the kitchen, the men again asked Kyle where the money and the "work" were. Then, the man who had

previously punched Kyle took her into the bathroom where he used duct tape to bind her wrists and ankles. He ordered her to the floor. Kyle told him that she was pregnant and pleaded with him not to hurt her. The man turned off the light and shut the bathroom door. After Kyle heard the men leave her apartment, she freed herself and called 911. She testified that she was "terrified."

¶ 7    A short while later, approximately one block from Kyle's apartment, police pulled over a white vehicle driven by defendant and containing his three codefendants. The driver's door of the vehicle opened, and defendant fell out onto the road. The vehicle sped away. Two officers pointed their guns at defendant, who walked away from them. Officer Spiewak testified that there was money "falling all over." He said, "I don't know from [defendant's] pockets, maybe from—it was just falling everywhere, blowing around in the wind, just blowing away." When Spiewak searched defendant for weapons, he recovered "clumps" and "wads" of money "in every pocket [defendant] had on his clothing." The money recovered from defendant totaled $5633.

¶ 8    Pursuant to a plea agreement with the State, Bates testified that the idea of the robbery originated with Martin, and Bates was tasked with finding a "ride." Bates then contacted defendant, who agreed to participate in the robbery because he needed rent money. Around 8 p.m. on February 23, 2010, defendant picked up Bates in a white vehicle. Defendant had a revolver. They collected Martin and then went to 1030 Lakehurst Drive. Their target was Adams, whom they believed had drugs and money.

¶ 9    According to Bates, upon discovering that the front door of the apartment building was locked, defendant called Golden to help them gain entry. Defendant drove the threesome to pick up Golden. The foursome then drove to a few more locations where they obtained "burglary tools"—hammers and screwdrivers. The foursome returned to the apartment building and defendant and Golden pried open the exterior door. A car came by, and the four men hid in the

bushes and watched Adams enter the building. Adams exited the building a few minutes later with his daughter and drove away. Bates voiced a reservation about going through with the robbery, but defendant wanted to proceed.

¶ 10    Bates testified that the foursome entered the building and went to the second floor. They had on masks and gloves. Upon reaching the second floor, Bates placed duct tape over the peepholes of the apartment doors "[s]o no one could see out." Defendant forced open Kyle's apartment door and the foursome entered. Defendant, Bates, and Golden went to Kyle's bedroom. Defendant asked Kyle where the money was, and when she told him, he grabbed something from where she was pointing and put it in his pocket. Then defendant told Kyle to get off the bed, flipped the mattress, and hit her in her eye. After the men brought Kyle into the kitchen, defendant took her into the bathroom. When defendant emerged from the bathroom, the foursome left the apartment. Bates took several of Kyle's items.

¶ 11    Bates testified that when they were a short distance from the apartment building a police car began following them, so defendant pulled the white vehicle over. At that moment, Martin, who was in the front passenger seat, grabbed the steering wheel, put his foot on the gas, and fought defendant for the gear shift. Martin then "knocked" defendant out of the car. Martin took over driving and a chase ensued. A short while later, the vehicle flipped over and crashed. Bates and Martin escaped and Golden remained inside. Bates and Martin ran into a field. While they were running, Martin passed Bates money. All four men were captured by the police.

¶ 12    From the snow outside the overturned vehicle, the police recovered a loaded revolver, two hammers, a black hat, a black glove, and items belonging to Kyle, including her identification card, credit cards, and handbag. After the State rested, the court denied the defense's motion for a directed verdict. The defense did not present any witnesses.

¶ 13    Following the guilty verdicts and direct appeal, on July 3, 2019, defendant, through counsel, filed a postconviction petition in which he raised multiple issues, including ineffective assistance of counsel. Specifically, defendant contended that trial counsel was ineffective for failing to call his then fiancé, Kelly Littlejohn, to testify at trial, or introduce other evidence regarding the source of the $5633 that was found on defendant when he was arrested. In support of this claim, defendant attached to his petition his own affidavit as well as an affidavit from Littlejohn. In their affidavits, defendant and Littlejohn averred that the $5633 came from a personal injury settlement that Littlejohn had received. Defendant also attached a letter dated February 9, 2010, and a release form substantiating Littlejohn's $10,000 settlement. Defendant maintained that this evidence would have been exculpatory.

¶ 14    On December 4, 2019, the trial court summarily dismissed defendant's petition as frivolous and patently without merit. Addressing defendant's argument regarding the source of the money, the trial court explained in part in a written order that "even taking, as this court must do, Defendant's allegations concerning the source of the cash as true, no reasonable probability exists that the presentation of this evidence would change the result of the trial." The trial court noted that on direct appeal the appellate court found that the evidence against defendant was not closely balanced. The trial court also determined that, "Defendant's explanation regarding the source of the money fails to overcome the other evidence of his participation in these offenses" and "Defendant cannot show prejudice with this claim."

¶ 15                            II. ANALYSIS

¶ 16    Defendant raises two arguments on appeal regarding the source of the $5633. He first contends that the trial court "fundamentally misunderstood the analysis to be undertaken" regarding his ineffective-assistance claim in first-stage postconviction proceedings. He maintains

that the trial court instead analyzed the claim under a heightened standard appropriate only for second-stage proceedings. He next argues that the trial court erred in summarily dismissing his postconviction petition, because his claim regarding the source of the $5633 met the appropriate standard. Thus, he requests that this court reverse the judgment summarily dismissing his postconviction petition and remand the case for second-stage proceedings. We address each argument in turn.

¶ 17        A. Ineffective Assistance Claims in First-Stage Postconviction Proceedings

¶ 18    Defendant argues that the trial court erred in its analysis in two respects. He argues that it was "inappropriate for the trial court to dismiss the decision not to call Kelly Littlejohn to testify as trial strategy." He also argues that it was "inappropriate" for the trial court to require that defendant "prove" prejudice at the first stage.

¶ 19    The State responds generally that the court acknowledged the appropriate legal standard for first-stage postconviction petition dismissals as applied to ineffective-assistance claims. Moreover, the State contends, even if the court applied the incorrect standard, the standard of review on appeal is *de novo*. Specifically, with respect to defendant's trial strategy argument, the State explains that the court's discussion of trial strategy was not directed to counsel's decision not to call Littlejohn as a witness but rather to defendant's claim (not argued on appeal) that counsel was ineffective for failing to advise defendant to testify. Regarding defendant's claim of prejudice, the State urges that evidence of defendant's guilt was overwhelming.

¶ 20    In its written order, the trial court clearly articulated the correct standard for ineffective-assistance claims in first-stage postconviction proceedings: "At the first stage of post-conviction proceedings, an ineffective-assistance-of-counsel claim may not be dismissed if it is arguable both that (1) counsel's performance fell below an objective standard of reasonableness (performance

prong), *and* (2) the defendant was prejudiced (prejudice prong)." (Emphasis in original.) More specifically, with regard to the prejudice prong the court noted, "To evaluate the prejudice prong, the court considers 'whether there is an arguable basis to conclude that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.' *Hernandez*, 2014 IL App (2d) 131082, ¶ 12." The court also explained, "Further, even taking, as this court must do, Defendant's allegations concerning the source of the cash as true, no reasonable probability exists that the presentation of this evidence would change the result of the trial. As the appellate court held on direct appeal, the evidence against Defendant was not closely balanced. See *Watt*, 2013 IL App (2d) 120183, ¶ 37. Defendant's explanation regarding the source of the money fails to overcome the other evidence of his participation in these offenses." Here, the trial court's remarks must be taken in the context of its lengthy, detailed, and accurate recitation of the trial court's determination at the first stage of a postconviction review of an ineffective assistance claim, regardless of whether the court here used the word "arguable" in its assessment. Even if we were to assume that the trial court applied the incorrect standard, our review of a first-stage dismissal of a postconviction petition is *de novo*. *People v. Hodges*, 234 Ill. 2d. 1, 9 (2009)

¶ 21                                      B. The $5633

¶ 22      We now turn to the substantive issue in this case, whether the trial court erred in dismissing defendant's postconviction petition regarding his ineffective assistance claim as to the source of the $5633. Defendant maintains that Littlejohn's testimony and documentary evidence regarding the source of the money would have supported his "otherwise uncorroborated defense," undermined the State's reliance on the money as "proof" of his guilt, and disputed Bates's claim that defendant needed rent money. Therefore, defendant concludes that his trial counsel rendered ineffective assistance for failing to investigate and present this evidence.

¶ 23    The State responds that evidence of defendant's guilt was overwhelming. Thus, it is not arguable that defendant was prejudiced by trial counsel's failure to call Littlejohn to testify or to introduce documents pertaining to the source of the money. We agree.

¶ 24    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) "provides a remedy to criminal defendants who have had substantial violations of their constitutional rights during their criminal trial." *People v. Vernon*, 276 Ill. App. 3d 386, 391 (1995). A postconviction proceeding "is a collateral attack on a final judgment." *People v. Lester*, 261 Ill. App. 3d 1075, 1077 (1994). "To survive dismissal at this [first] stage, a petition need only present the gist of a constitutional claim." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). This is a low threshold. *Gaultney*, 174 Ill. 2d at 418. A petition may be summarily dismissed as frivolous or patently without merit only if it has no arguable basis in either law or fact. *Hodges*, 234 Ill. 2d. at 11-12.

¶ 25    Under the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. Here, evidence of defendant's guilt was so overwhelming such that defendant cannot demonstrate that he was arguably prejudiced by trial counsel's decision not to introduce evidence or elicit testimony regarding the source of the $5633.

¶ 26    The evidence showed that defendant picked up his codefendants in his vehicle and drove them around to pick up burglary tools. Defendant had a revolver with him. Defendant arranged for Golden to assist in breaking into Kyle's apartment building. Defendant then forced Kyle's

apartment door open. Bates saw defendant put something recovered from Kyle's dresser in his pocket before defendant flipped Kyle's mattress and punched her in the left eye. Later, defendant took Kyle into the bathroom where he bound her wrists and ankles while she pleaded with him, informing him that she was pregnant. Defendant left her in the dark and closed the door before driving his codefendants away from the scene. A short while later, a police officer saw defendant fall out of the driver's door of the getaway vehicle in which the codefendants were riding. The recorded video shows defendant looking at the police over his shoulder and sauntering away. Officer Spiewak saw money blowing around by defendant, and when defendant was searched, "clumps" and "wads" of money were found in every pocket on his person. A total of $5633 was recovered from defendant. Items recovered in the snow outside of the overturned getaway car included a loaded revolver, two hammers, a black hat and glove, and Kyle's purse, credit cards, and identification.

¶ 27    Defendant cites cases that are distinguishable. In *People v. Ramirez-Lucas*, 2017 IL App (2d) 150156, the appellate court held that it was arguable that trial counsel was ineffective for failing to call three occurrence witnesses whose testimony would have supported the defendant's otherwise uncorroborated self-defense theory. *Ramirez-Lucas*, 2017 IL App (2d) 150156, ¶ 44. "[T]he witnesses stated that the defendant (1) yelled, 'Don't touch me'; (2) shot at the floor in response to being pushed and having a bottle thrown at him; (3) was hit in the head with a pool cue; and (4) tried to get away but a group of men jumped him and took him toward the kitchen." *Ramirez-Lucas*, 2017 IL App (2d) 150156, ¶ 50. *People v. Brown,* 336 Ill. App. 3d 711 (2002) involved the affidavits of two alibi witnesses who averred that the defendant was out of town at the time of the offense. *Brown*, 336 Ill. App. 3d at 718. Both cases differ from the present case because they involve witnesses who could provide exculpatory testimony.

¶ 28    Here, Littlejohn was not an occurrence witness, nor could she supply an alibi for defendant. Even if Littlejohn testified that she received a personal injury settlement, there is no way to tell if the money found on defendant was from the settlement proceeds or the robbery. Defendant chose not to testify. Thus, there would have been no connection established. Therefore, Littlejohn's testimony could not support the defense theory that the money was not his own, let alone exonerate defendant. It could be inferred that defendant simply brought Littlejohn's money with him while he and his codefendants committed a home invasion and a robbery, during which a pregnant woman was punched in the face and left bound in a dark bathroom. Littlejohn could only testify that she had received a monetary settlement four days prior to the robbery and that she gave some of the money to defendant. This testimony and supporting documents would be of no arguable consequence given the overwhelming evidence implicating defendant. As previously noted, he procured the burglary tools, forced Kyle's apartment door open, brought a loaded revolver to her apartment before punching her in the face and leaving her bound in a dark bathroom, and he provided and drove the getaway car.

¶ 29    Because defendant cannot establish that he was arguably prejudiced, we need not examine whether trial counsel's performance was arguably unreasonable. See *Strickland*, 466 U.S. at 697 (a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one"); *People v. Cherry*, 2016 IL 118728, ¶ 24 (failure to satisfy either prong defeats the ineffectiveness claim). Accordingly, the trial court properly dismissed defendant's postconviction petition.

¶ 30                                III. CONCLUSION

¶ 31    For the foregoing reasons, we affirm.

¶ 32    Affirmed.