2022 IL App (1st) 210022-U

SECOND DIVISION
February 8, 2022

No. 1-21-0022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 13 CR 248 |
| DEMETRIUS JACKSON, | ) ) ) | Honorable Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County summarily dismissing defendant's petition for postconviction relief from defendant's conviction for first degree murder is affirmed; defendant failed to state an arguable claim he received ineffective assistance of trial counsel based on trial counsel's failure to call defendant's son as a witness, failure to challenge testimony by defendant's spouse, or failure to offer additional evidence of defendant's injuries resulting from the incident between defendant and the victim.

¶ 2    In June 2016, following a bench trial, the circuit court of Cook County convicted defendant, Demetrius Jackson, of first degree murder. At trial, defendant raised the affirmative defense of self-defense. This court affirmed defendant's conviction and sentence on direct appeal. 2017 IL App (1st) 143395-U. In August 2018, defendant filed a petition for

postconviction relief on the grounds of ineffective assistance of trial and appellate counsel. In October 2018 the circuit court summarily dismissed defendant's petition for postconviction relief. In January 2021 defendant filed a notice of appeal from the final judgment of summary dismissal of his petition for postconviction relief.

¶ 3    For the following reasons, we affirm the trial court's order summarily dismissing defendant's petition for postconviction relief.

¶ 4                                    BACKGROUND

¶ 5    On November 21, 2012, defendant got into an argument with his wife, Charity Hamilton. Defendant's wife informed the victim, William Terry, of the altercation, and Terry intervened. As a consequence of Terry's intervention defendant stabbed Terry to death. We will summarize only that testimony from defendant's trial that is pertinent to the issues in this appeal.

¶ 6    An Assistant Medical Examiner testified that the victim died of multiple stab wounds and that he observed defensive wounds to the victim. Before trial, defendant asserted self-defense as an affirmative defense and filed a motion to admit evidence of the victim's "aggressive and violent character" specifically in the form of the victim's criminal history, of which defendant was aware. See *People v. Lynch*, 104 Ill. 2d 194, 201-02 (1984) ("Convictions for crimes of violence, such as *** convictions for battery, are reasonably reliable evidence of a violent character."). In October 2013 the trial court granted defendant's motion and defendant entered into evidence a certified copy of the victim's convictions for home invasion, residential burglary (two counts), robbery of a victim over 60 years of age, aggravated battery, aggravated battery of a senior citizen, and intimidation.

¶ 7    At defendant's trial, a neighbor, Michelle Nellis, testified she saw defendant and the victim arguing in the street. She also saw defendant "going toward" the victim and the victim

backing up, but she did not see anything in defendant's hands. Nellis saw defendant swinging his arms at the victim as defendant continued to advance while the victim was backing up. Nellis saw the victim trip over the curb as he backed away whereupon defendant returned to his own home. The victim stood, and Nellis saw blood on this shirt. Nellis testified on cross-examination that when she saw defendant and the victim arguing in the street she did not see Charity. Nellis also testified on cross-examination that she never saw the victim swinging his arm.

¶ 8     Charity's son from a prior relationship, Jasean Smith, testified defendant and his mother, Charity, were arguing in the kitchen, and Charity left the house "to go get" the victim. Jasean testified defendant initially followed Charity out of the house but defendant returned and retrieved two knives. Defendant took the knives onto the porch of his home holding one in each hand. Charity and the victim returned to the porch at defendant's house whereupon the victim asked defendant what was going on. Charity stood behind the victim and she and defendant resumed their argument. Defendant was saying "I'm going to kill you." Jasean testified that defendant approached the victim and the victim pushed defendant away with one hand while backing up.

¶ 9     On cross-examination Jasean testified that the victim pushed defendant multiple times and defendant kept telling the victim "don't touch me," but the victim persisted in pushing defendant in the chest. Jasean also testified on cross-examination that defendant was yelling at that time, defendant was trying to talk to Charity but the victim was between defendant and Charity, and the victim continued to push defendant. Jasean testified defendant continued to approach the victim and the victim continued to back away until the two men reached the street. Jasean testified defendant was not swinging the knives when the victim was pushing defendant. Jasean testified that when they got into the street the victim punched his father in the jaw. Jasean

testified defendant was trying to get close to the victim when the victim punched defendant. Jasean opined the victim punched defendant "just like to back him up." After the victim punched defendant, that is when defendant started swinging the knives. The victim tripped over the curb and fell to the ground, and defendant also fell. Defendant got up and came back into defendant's house.

¶ 10    Charity testified that at some point during her argument with defendant she went onto their front porch and then went to a neighbor's house, the home of the victim's sister a few doors down, because Charity had forgotten her cell phone inside the home. Charity wanted a cell phone to call the police. The victim sometimes stayed at the neighbor's home, and Charity encountered him. Charity explained the situation to the victim, the victim gave Charity his cell phone to use, and the victim and Charity proceeded back to defendant and Charity's house. As he approached, the victim was asking defendant what was happening and trying to calm defendant. Charity testified defendant did initially calm down as the victim was talking to him. Charity testified the victim was touching defendant while still trying to calm him. She testified defendant had been approaching her and the victim from defendant's house. Then, when the victim touched defendant again, defendant yelled "don't [expletive] touch me again, don't touch me." Charity testified defendant then went back into defendant's house and retrieved two knives.

¶ 11    On cross-examination, Charity testified defendant did not have, or go to retrieve, any knives the first time the victim pushed defendant. She also testified on cross-examination that the victim did not push defendant until defendant started "coming aggressively towards" the victim. Defendant returned with the knives, came off the porch, and began approaching her and the victim while yelling he would kill them. Charity testified the victim walked toward defendant "to touch him to put the knives down" then defendant "kind of launched at him [(the victim).]" That

is when the victim started backing toward the street. Defendant was coming toward the victim swinging the knives. Charity looked away at her children in the window of her house and when she looked back, defendant and the victim had both tripped over the curb and were lying on the ground. Charity testified she never heard the victim threaten defendant.

¶ 12    Defendant testified that when Charity left and went to the victim's sister's house, he realized he had been locked out of his basement and retrieved a knife to open the door. On cross-examination the State impeached defendant with his statement to police that when he was arguing with Charity in their kitchen, he grabbed a couple of knives and "told her not to talk [expletive.]" Defendant testified that when defendant opened the basement door and retrieved his keys and cigarettes he went to his front porch. Charity was with the victim. Defendant testified that when the victim and Charity first approached him, he was on his own front porch and the victim was "very loud and angry." Defendant testified he told the victim to stay out of the argument between defendant and his wife. The victim instead pushed defendant in the chest, hard, with two hands, causing defendant to stumble but not fall. Defendant testified he continued to argue with his wife, and the victim pushed him "aggressively" in the chest with two hands. At that point defendant told the victim to stay out of the argument and not to touch him again. On cross-examination defendant testified that he grabbed the knife after the victim pushed him. Defendant testified he tried to step around the victim and that is when the victim punched him in the face. As a result of the punch defendant suffered a cut on the inside of his mouth which later led to an infection. Defendant testified that after the punch he swung at the victim and the two started tussling.

¶ 13    On cross-examination, defendant testified he swung at the victim with the knife in his hand and the victim stepped back; then the two men started to tussle. Defendant testified the

victim held him and defendant tried to pull away but the victim would not let go. The two men continued in this way until they tripped and fell over the curb. Defendant testified he still had the knife at that time, and he "actually feared for [his] life, and [he] stabbed [the victim] in self-defense." Defendant stated, "once he punched me in the mouth, I was kind of dazed. And when we fell to the ground, I was terrified. I just only acted in self-defense." Defendant testified that he was terrified because the victim told him "several stories about his past and the fact that he was sentenced to 14 years for the aggravated battery on a senior citizen and a lot of different stories that we talked about over the years." Defendant stabbed the victim after the two men were on the ground.

¶ 14    In August 2018 defendant filed the *pro se* petition for postconviction relief that is the subject of this appeal. Defendant's petition alleged, in pertinent part, that (1) defendant was denied his right to the effective assistance of counsel because his trial counsel failed to (a) object to Charity's testimony, (b) investigate Demetrius Jackson, Jr. (defendant's biological son who also witnessed the incident) and call him as a witness, and (c) call defendant's civil attorneys to testify as to injuries defendant received as a result of the altercation with the victim as evidenced by defendant's settlement of a civil suit against the city of Chicago based on denying him medical attention for those injuries. Specifically, defendant's *pro se* petition alleged trial counsel should have objected to Charity's testimony based on spousal privilege and because the State coerced Charity to testify. Defendant's *pro se* petition also alleged that trial counsel provided ineffective assistance by failing to interview Demetrius Jackson, Jr. and call him as a witness to corroborate defendant's testimony. Defendant's petition also alleged that defendant received ineffective assistance of appellate counsel based on the failure to preserve and raise alleged prosecutorial misconduct and trial counsel's alleged ineffectiveness related to that issue on direct

appeal. Defendant alleged the State committed prosecutorial misconduct by coercing Charity to testify falsely against defendant. The petition alleged that in a phone call between Charity and defendant, Charity told him that an assistant state's attorney threatened to jail her for 30 days if she failed to testify. Charity allegedly told defendant that under threat of spending 30 days in jail she "only did what she was told to do and say." Finally, defendant's *pro se* petition asserted his civil attorneys were willing to testify at the criminal trial, but defendant did not attach their affidavits to the petition. Defendant did attach a copy of a letter from his civil attorneys informing defendant that settlements with the city of Chicago and Cook County had been finalized and his civil suit against the city dismissed with prejudice. Defendant did not attach the executed settlements and releases or dismissal of the complaint to the petition.

¶ 15    In October 2018, the trial court entered a written order finding defendant's postconviction petition frivolous and patently without merit and summarily dismissing the petition. The court summarized the evidence in part as follows:

> "[The victim] intervened [in an argument between defendant and his wife] and a
> verbal altercation escalated into a physical one. [Defendant] had knives in each
> hand. [The victim] pushed and punched [defendant.] [Defendant] swung the
> knives at [the victim] as [the victim] backed away. The two fell to the ground and
> [defendant] stabbed [the victim] multiple times. Both got up and walk (*sic*) to
> their houses. [The victim] eventually succumbed to his injuries."

As to defendant's allegations, the court found defendant failed to present arguable claims of ineffective assistance because (1) the marital privilege in Illinois did not apply to any of Charity's testimony; (2) defendant's claim trial counsel was ineffective for failing to argue the State coerced Charity to testify, and that the State committed prosecutorial misconduct, are not

arguable because Charity did, in fact, risk jail time for contempt if she refused to testify, and at best the information provides impeachment material and trial counsel did impeach Charity's testimony with prior inconsistent statements; (3) Demetrius Jr.'s proposed testimony does not materially differ from the evidence at trial and does not provide evidence to establish self-defense or unreasonable belief self-defense and thus would not have arguably changed the outcome of the case; and (4) defendant offered evidence of his civil suit to substantiate that the victim injured him but that was not a contested fact where the witnesses agreed the victim hit defendant.

¶ 16     In November 2018, defendant filed a *pro se* notice of appeal from the judgment summarily dismissing the petition as well as a motion to reconsider that judgment. In February 2019 the trial court entered an order striking the motion to reconsider on the ground of lack of jurisdiction resulting from the filing of a notice of appeal. In July 2020 this court entered an order dismissing defendant's appeal and directing the trial court to rule, pursuant to Illinois Supreme Court Rule 606(b) (eff. Jul. 1, 2017), on defendant's motion to reconsider the judgment summarily dismissing the postconviction petition. In November 2020, the trial court entered a written order denying defendant's motion to reconsider the order summarily dismissing the postconviction petition. In January 2021, defendant filed a notice of appeal from the trial court's November 2020 judgment.

¶ 17     This appeal followed.

¶ 18                                ANALYSIS

¶ 19     This court will review the trial court's summary dismissal of a defendant's petition for postconviction relief under the *de novo* standard of review. *People v. Steward*, 406 Ill. App. 3d 82, 89 (2010). "Under a *de novo* standard of review, the reviewing court owes no deference to

the trial court's judgment or reasoning. [Citation.] *De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform." *People v. Jackson*, 2021 IL App (1st) 190263, ¶ 38. When performing this analysis, the question for this court is whether the petition has an arguable basis in either law or in fact. *Steward*, 406 Ill. App. 3d at 89 (quoting *People v. Hodges*, 234 Ill. 2d 1, 17 (2009)). A petition lacks an arguable basis in law or in fact when it is based on an indisputably meritless legal theory or it is based on fanciful factual allegations. *Hodges*, 234 Ill. 2d at 16. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record" whereas fanciful factual allegations "include those which are fantastic or delusional." *Id.* at 16-17. Additionally, "[t]he petition is required to have attached affidavits, records or other evidence to support its allegations or state why this evidence is not attached. *Steward*, 406 Ill. App. 3d at 88 (citing 725 ILCS 5/122–2 (West 2008)).

¶ 20    On appeal, defendant argues his petition states an arguable claim that he received ineffective assistance of counsel at trial. A claim of ineffective assistance in a postconviction petition is evaluated under the same two-prong standard set out in *Strickland*. *People v. Shief*, 2016 IL App (1st) 141022, ¶ 55. At this stage of postconviction proceedings, under the first prong of the *Strickland* test the defendant must show that it is arguable that his attorney's representation fell below an objective standard of reasonableness. *Id.* ¶ 56. See also *Scott*, 2011 IL App (1st) 100122, ¶¶ 27, 29 ("At the first stage of postconviction proceedings, a petition alleging ineffective assistance of counsel may not be dismissed if: (1) counsel's performance arguably fell below an objective standard of reasonableness."). The question is whether it is arguable that counsel made errors so serious that counsel was not functioning at the "counsel" guaranteed by the sixth amendment. *Id.*; *People v. Temple*, 2014 IL App (1st) 111653, ¶ 53. Under the second prong of the ineffective assistance of counsel test, the defendant must show

that it is arguable that counsel's deficient performance prejudiced him. *Scott*, 2011 IL App (1st) 100122, ¶ 29 ("At the first stage of postconviction proceedings, a petition alleging ineffective assistance of counsel may not be dismissed if: *** (2) the petitioner was arguably prejudiced."). Under the second prong, the question is whether it is arguable that but for counsel's deficient performance the outcome of the trial would have been different. *Id.*; *Temple*, 2014 IL App (1st) 111653, ¶ 53.

¶ 21    Although defendant raised additional claims in his petition he pursues only three on appeal: (1) trial counsel failed to call Demetrius Jr. as a witness; (2) trial counsel failed to adduce evidence the State coerced Charity to testify falsely against defendant with a threat of jail time if she refused to testify; and (3) trial counsel failed to present evidence of the severity of his injuries from the victim. We address these, and only these arguments, in turn. See *People v. Deloney*, 341 Ill. App. 3d 621, 625 n1 (2003) ("we note that while defendant alleged in his petition that there was 'judicial bias' at trial, he fails to further discuss or offer any evidence in support of this issue in either of his briefs. Therefore, we consider the issue waived on appeal.").

¶ 22                              A. Failure to Call Demetrius Jr. as a Witness

¶ 23    Defendant argues his petition states an arguable claim trial counsel was ineffective in failing to call Demetrius Jr. as a witness because Demetrius Jr.'s testimony would have provided critical evidence in support of defendant's affirmative defense of self-defense. Defendant attached Demetrius Jr.'s affidavit in which Demetrius Jr. averred that he was supposed to be a witness for his father at his father's trial. Demetrius Jr. averred he attempted to contact defendant's trial attorney but defendant's attorney never called him back. Demetrius Jr. averred he was present before, during and after the argument between defendant and Charity and the incident between defendant and the victim. Demetrius Jr. averred defendant went to the kitchen

to get a knife to unlock the basement door then defendant sent him into the basement to retrieve defendant's keys and cigarettes. Defendant then went onto their front porch to smoke. The victim came on their porch and "started to hollering at [defendant] real loud." Demetrius Jr. and Jasean watched from the window. Demetrius Jr. averred defendant told the victim he had nothing to do with the argument between defendant and Charity, and the victim "pushed [defendant] as he was standing on the end porch (*sic*)." Defendant told the victim to keep his hand off of him and the victim "was getting loud again, pushed him 4 times, [defendant] said 'Don't touch me again,' and defendant tried to step around the victim. Demetrius averred the victim swung at defendant and "bust his mouth open." Defendant swung back and the two men started tussling. Defendant said, " 'Let me go,' " and the victim grabbed defendant by the neck. Demetrius Jr. averred they fell over the curb and both went down to the ground. Demetrius Jr. and Jasean continued to watch from the window. He stated both men got up, the victim went toward his sister's house and defendant came toward their house. Demetrius Jr.'s affidavit opines the victim "started the fight attacking [defendant.]"

¶ 24    First, defendant argues his allegations concerning Demetrius Jr. are not fanciful nor delusional. We agree. See *Hodges*, 234 Ill. 2d at 18-19 (in postconviction claim of ineffective assistance for failing to call certain witnesses, finding allegations did not lack an arguable basis in fact where the defendant identified potential witnesses, summarized their testimony, attached the witnesses' signed affidavits, and potential testimony was corroborated by the State's evidence). Therefore, we find this claim in defendant's postconviction petition is not lacking an arguable basis in fact.

¶ 25    Second, we begin by noting that this court has recognized that where the evidence the defendant claims should have been offered is cumulative to that evidence already in the record

the defendant cannot make out a claim that his counsel was incompetent. *People v. Vernon*, 276 Ill. App. 3d 386, 393 (1995). See also *People v. Evans*, 2017 IL App (1st) 143268, ¶¶ 35, 42 (rejecting claim of ineffective assistance in part because newly proffered testimony was cumulative of trial testimony where both witnesses provided substantially the same version of events); *People v. Giles*, 209 Ill. App. 3d 265, 271 (1991) (rejecting claim of ineffective assistance of counsel based on failure to call additional alibi witness where witness's testimony "would have only been cumulative"). Furthermore, the decision whether to call various witnesses is a matter of trial strategy which may not be second-guessed under *Strickland*. *People v. Simms*, 168 Ill. 2d 176, 200 (1995).

¶ 26 In this case, defendant recognizes that the weakness in his argument that it is arguable that he was prejudiced by trial counsel's failure to call Demetrius Jr. as a witness is that other witnesses provided similar testimony, and he argues that the testimony is not just cumulative but is corroborative, and evidence corroborating the defense's version of events has the potential to change the outcome of a trial. In this instance, defendant argues that Demetrius Jr.'s testimony makes it more probable that there would have been a finding that defendant was in fear of his life, reasonably or unreasonably, and acted in self-defense. In support of his argument defendant relies on *People v. Warren*, 2016 IL App (1st) 090884-C, where this court wrote that "[c]orroborative evidence is not the same as cumulative evidence." *Warren*, 2016 IL App (1st) 090884-C, ¶ 81. Defendant's reliance on *Warren* is misplaced.

¶ 27 First, defendant ignores this court's finding as to what constitutes "cumulative" evidence. This court found that "[e]vidence is considered cumulative if it 'adds nothing' to what the jury heard at trial." *Id.* ¶ 81. In this case, defendant does not and cannot argue that Demetrius Jr.'s testimony would add to what the jury heard at trial because Demetrius Jr.'s proffered testimony

is wholly consistent with the evidence adduced at defendant's trial. In contrast, the proffered evidence in *Warren* was testimony that two other men confessed to committing the crime the defendant was convicted of (*id.* ¶ 84), and there had been "no evidence at trial that either [witness] had confessed to [the] murder" (*id.* ¶ 81). Thus, in *Warren*, this court held that the proffered testimony "would add something to the evidence the jury heard." *Id.* ¶ 81. In this case, there was substantial evidence at trial as to the facts and circumstances of the incident, including evidence that the victim punched defendant and evidence from which a reasonable trier of fact might have concluded that the victim was the initial aggressor. See *supra*, ¶ 9. We find that Demetrius Jr.'s testimony would not add anything to the evidence the trier of fact heard in this case and, therefore, is merely cumulative. See *Warren*, 2016 IL App (1st) 090884-C, ¶¶ 81-84; see also *People v. Molstad*, 101 Ill. 2d 128, 134-35 (1984) (relied upon by *Warren* and finding that additional testimony from five witnesses who participated in the crime as to who *was* present at the time of the offense "raises additional questions concerning the trial court's verdict" where at the defendant's trial "the only testimonial evidence that [the defendant] could offer *** was his testimony that he *was not* present" (Emphases added.)).

¶ 28   This court relied on *Molstad* for its general statement that corroborative evidence is not the same as cumulative evidence; but the context in which courts have made that observation completely differ from the facts of this case. In *Molstad*, the trier of fact had not heard evidence as to who was present at the time of the offense, therefore we may conclude that the proffered testimony in that case would have added to what the trier of fact heard at trial. *Molstad*, 101 Ill. 2d at 134-35. Accord, *Hodges*, 234 Ill 2d at 5, 20-21 (finding that independent witness testimony the victim was armed would have supported theory defendant believed his actions were justifiable where State's occurrence witness testified the victim as unarmed and only

contradictory evidence came from the defendant); *People v. Sparks*, 393 Ill. App. 3d 878, 886 (2009) (also relied upon by *Warren* and finding that proffered evidence presented a "conflicting version about the incident"). Defendant argues that Demetrius Jr.'s testimony, that "[i]t was only after Jackson was punched by [the victim] that [defendant] started to swing the knives," is part of a "competing version of events" to the State's evidence. We disagree. Evidence that defendant began to swing his knives at the victim *after* the victim pushed and punched him was before the trial court. See *supra*, ¶ 9. Demetrius Jr.'s testimony to that effect would have been merely cumulative of the evidence at trial. Defendant's argument here, fails.

¶ 29 Defendant's ineffective assistance of counsel claim rests on an indisputably meritless legal theory because the record completely contradicts defendant's claim that it is arguable counsel's performance was deficient or that defendant was prejudiced by failing to call Demetrius Jr. to offer merely cumulative testimony. See *Evans*, 2017 IL App (1st) 143268, ¶ 35; *Vernon*, 276 Ill. App. 3d at 393. Accordingly, we hold the trial court properly summarily dismissed defendant's postconviction petition alleging ineffective assistance of counsel on this ground. *Hodges*, 234 Ill. 2d at 16.

¶ 30     B. Failure to Elicit Evidence the State Coerced Defendant's Wife's Testimony

¶ 31 Next, defendant argues that his petition states an arguable claim that trial counsel was ineffective in failing to adduce evidence that the State coerced Charity to testify falsely against him by threating her with jail time if she refused to testify. Defendant attached Charity's affidavit in which she averred as follows:

"I had to testify against my husband in court because the state's attorney told me if I didn't I would have to serve 30 days in jail. So I had to testify due to

the fact that if I didn't I did not have anyone to watch our kids if I did 30 days in jail."

¶ 32   Initially, we note that Charity's affidavit does not say that she perjured herself at defendant's trial. The Post-Conviction Hearing Act requires the defendant to attach some factual documentation which supports the allegations in the petition. *People v. Delton*, 227 Ill. 2d 247, 254 (2008). Regardless, defendant's argument admits the only value to this evidence would be to impeach Charity by demonstrating her bias to testify favorably for the State, and he asserts that demonstrating that bias would have impacted the outcome of the trial; therefore, defendant argues, he has stated an arguable claim of ineffective assistance of counsel. "Whether and how to cross-examine or impeach a witness is generally a matter of trial strategy, which will not by itself support an ineffective assistance claim. *People v. Bell*, 2021 IL App (1st) 190366, ¶ 79. However, the complete failure to impeach the sole eyewitness when significant impeachment is available is not trial strategy and, thus, may support an ineffective assistance claim. [Citation.]" (Internal quotation marks omitted.) *People v. Layton*, 2021 IL App (1st) 172418, ¶ 86 (quoting *People v. Salgado*, 263 Ill. App. 3d 238, 246-47 (1994)). "When assessing the importance of the failure to impeach for purposes of a *Strickland* claim, '[t]he value of the potentially impeaching material must be placed in perspective.' " *Id.* at 247.

¶ 33   Defendant's claim of ineffective assistance in this regard is based on a meritless legal theory that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16. Defendant argues that Charity "provided critical testimony for the State that [defendant] threatened to kill her and [the victim.]" Defendant later asserts that Charity "provided the most damning evidence against [defendant]" by testifying that defendant "threatened to kill her and [the victim.]" He also notes that Charity did not testify that the victim punched defendant. However, the record contains

ample evidence the victim punched defendant and that fact was not contested at trial. Thus, defendant's argument reduces to the failure to impeach Charity to show her bias to testify falsely that defendant threated to kill her and the victim.

¶ 34    Our supreme court has instructed that the value of the potentially impeaching material must be placed in perspective with the State's case. *Jimerson*, 127 Ill. 2d at 33. The State, and defendant, adduced evidence that defendant intentionally stabbed the victim to death with the sole difference in the proffered evidence being whether defendant acted based on a reasonable or an unreasonable belief he needed to use deadly force in self-defense.

> "The elements of self-defense are: (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person threatened were objectively reasonable." *People v. Lee*, 213 Ill. 2d 218, 225 (2004) (citing 720 ILCS 5/7-1 (West 1998)).

¶ 35    Defendant's trial counsel could have concluded that attempting to impeach Charity with evidence of possible coercion by the State to testify defendant threatened her and the victim—which the trial court found evidenced that defendant was the aggressor—would not have added significantly to the defense's case given the testimony of another witness as to defendant's utterances and, more importantly, the similarities in the testimony as to defendant's conduct and the victim's conduct. "Whether a killing is justified under the law of self-defense depends upon the surrounding facts and circumstances and is to be determined by the trier of fact." *People v. Woods*, 81 Ill. 2d 537, 542 (1980).

¶ 36  Defendant argues  the trial court's finding that defendant's utterances establish that defendant was the initial aggressor proves trial counsel was ineffective for failing to impeach Charity. However, we note the trial court had sufficient evidence to determine which party was the aggressor from evidence other than Charity's testimony. A defendant fails to establish prejudice from trial counsel's strategic decisions regarding challenging or admitting certain evidence when other evidence of record is "more than sufficient to convict." See, *e.g.*, *People v. Williams*, 2012 IL App (1st) 100126, ¶ 36 (finding defendant failed to show he was prejudiced by trial counsel's cross-examination that allegedly undermined the defense's theory of the case). Furthermore, "[a] defendant can overcome the strong presumption that defense counsel's choice of strategy was *sound* if counsel's decision appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." (Emphasis in original.) *People v. King*, 316 Ill. App. 3d 901, 916 (2000). We find that in the context of this case, the record establishes that trial counsel could have reasonably determined as a matter of sound trial strategy that any potential impeachment evidence was not "significant." Compare *Salgado*, 263 Ill. App. 3d at 247 ("the impeachment value of directly contradictory testimony made under oath at a prior trial by the State's premier eyewitness[—in fact, "the only witness at the defendant's trial to implicate him through direct testimony—]can hardly be overestimated").

¶ 37  Moreover, to establish an arguable claim of ineffective assistance of counsel defendant must demonstrate that it is arguable that counsel's allegedly deficient performance prejudiced him. *Hodges*, 234 Ill. 2d at 17.

> "As noted, the examination or impeachment of a witness is generally considered
> to be trial strategy, which does not support a claim of ineffective assistance of

counsel. [Citations.] 'The manner in which to cross-examine a particular witness involves the exercise of professional judgment which is entitled to substantial deference from a reviewing court.' [Citation.] The only way for a defendant to prevail on his ineffectiveness claim is by 'showing that counsel's approach to cross-examination was objectively unreasonable.' [Citation.]" *People v. Lacy*, 407 Ill. App. 3d 442, 463 (2011).

¶ 38    In this case, efforts to impeach Charity with the fact she only testified out of fear of losing her children could have invited the trier of fact to conclude that her testimony was believable because she was initially reluctant to testify against her husband which also may have caused her to lose her children and her children to lose their father. See *Jimerson*, 127 Ill. 2d at 33-34 (finding efforts to impeach the witness with the full range of her prior testimony could well have invited the jury to conclude that her testimony in this case was believable precisely because of the unbelievable character of her earlier assertions that she knew nothing about the crimes and that she and the defendant were innocent of the charges). Defendant's trial counsel's selected strategy was to cross-examine Charity in a manner to highlight the victim's aggressive behavior toward defendant, that defendant did not initially respond with deadly force until after the victim repeatedly pushed defendant, and Charity's lack of awareness of the victim's violent past. In this case we cannot find that it is arguable that counsel was ineffective in his examination of Charity because counsel's performance was not objectively unreasonable. See *Lacy*, 407 Ill. App. 3d at 463-65 (detailing points on which defense counsel cross-examined witness and finding no ineffective assistance of counsel from failure to further impeach witness). We hold defendant has not established an arguable claim that he received ineffective assistance of counsel

based on the failure to impeach Charity with her fear of losing her children if she did not testify favorably for the State.

¶ 39        C. Failure to Elicit Evidence Corroborating the Severity of Defendant's Injury

¶ 40        Finally, defendant argues he stated an arguable claim that he received ineffective assistance of counsel because his trial attorney failed to present "additional" evidence of the severity of the injury defendant received when the victim punched him. Defendant argues that had trial counsel presented additional evidence of the severity of his injuries, that evidence would have "tipped the scales" in defendant's favor and rebutted the State's argument in closing that defendant's injury was not severe enough to warrant stabbing the victim to death. As noted above, where the evidence the defendant claims should have been offered is cumulative to that evidence already in the record, the defendant cannot make out a claim that his counsel was incompetent. *Vernon*, 276 Ill. App. 3d at 393. Defendant's argument in this court effectively admits that this evidence would have been cumulative to his testimony at trial and, he argues, "presented a *stronger* self-defense claim." (Emphasis added.)

¶ 41        We find that evidence concerning defendant's injury, whether through testimony by his civil attorneys, medical records, or any other evidence, would add nothing to what the trier of fact heard at trial and is, therefore, cumulative. *Warren*, 2016 IL App (1st) 090884-C, ¶ 81. "Trial counsel's performance cannot be considered deficient because of a failure to present cumulative evidence." *People v. Henderson*, 171 Ill. 2d 124, 155 (1996). Defendant's claim of ineffective assistance is based on an indisputably meritless legal theory. The trial court properly summarily dismissed the petition on this ground.

¶ 42        Finally, because we have found defendant has not demonstrated that any of his individual claims state an arguable claim of ineffective assistance of counsel, we cannot find that the

cumulative effect of the alleged errors—because there were none—deprived defendant of his right to effective assistance.

¶ 43　　Accordingly, the trial court's judgment is affirmed.

¶ 44　　　　　　　　　　　　　CONCLUSION

¶ 45　　For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 46　　Affirmed.